## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TROY FATH, VINCENT PUMA, and HIGINIO BAUTISTA individually and on behalf of others similarly situated,<br><br><br>Plaintiffs,<br><br>vs.<br><br>HONDA NORTH AMERICA, INC., AMERICAN HONDA MOTOR CO., INC., and HONDA MOTOR COMPANY, LTD.,<br><br>Defendants. | Civ. No.:<br><br><br>CLASS ACTION<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs Troy Fath, Vincent Puma and Higinio Bautista bring this action against Defendants Honda North America, Inc. ("Honda North America"), American Honda Motor Co., Inc. ("American Honda"), and Honda Motor Company, Ltd. ("Honda Motor Company") (collectively "Defendants" or "Honda"), by and through their attorneys, individually and behalf of all others similarly situated, and allege as follows:

### INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former Honda vehicle owners and lessees of model years ("MY") 2015-18 Honda CR-V and 2016-18 Honda Civic vehicles equipped with "Earth Dreams" 1.5L, 2.0L and 2.4L direct injection engines (the

"Class Vehicles" or "Vehicles").[1]

2.      This action arises from Defendants' failure, despite their longstanding knowledge of this material and manufacturing defect, to disclose to Plaintiffs and other consumers that the Class Vehicles are predisposed to an engine defect that causes fuel dilution of the engine oil resulting in decreased oil viscosity, premature wear and ultimate failure of the engines, engine bearings and other internal engine components and an increased cost of maintenance (the "Engine Defect"). Such premature failures can also result in stalling events and other dangerous situations for Class Vehicle occupants and others on the road.

3.      Significantly, and as a result of the Engine Defect, the engine oil within the Class Vehicles will be caused to lose its original viscosity, meaning the lubricating properties of the oil diminish and become less capable of withstanding the higher loads of an internal combustion engine.  This can result in contact between metal surfaces within the engine, leading to rapid wear of internal bearings, the rotating assembly and other internal parts that rely on lubrication to function correctly.

4.      Not only did Honda actively conceal the fact that the Class Vehicle's engines were not assembled and manufactured correctly (and require costly repairs

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

to fix), they did not reveal that the existence of this defect would diminish the intrinsic and resale value of the Class Vehicles.

5.      Honda has long been aware of the Engine Defect. Despite its longstanding knowledge of this defect, Honda has been unable to adequately repair the Class Vehicles when the defect manifests.

6.      Many owners and lessees of Class Vehicles have communicated with Defendants and their agents to request that Honda remedy and/or address the Engine Defect and/or resultant damage at no expense. Defendants have failed and/or refused to do so – often conveying to Vehicle owners and lessees that Class Vehicles are operating as intended and therefore cannot be repaired under warranty or otherwise.

7.      For customers whose Vehicles are within the Power Train Warranty period (which extends for the shorter of five years or 60,000 miles), Honda has done nothing to address or correct the Engine Defect when it manifests in the Class Vehicles.  Instead, Honda has blamed Class members for not driving the Class vehicles for longer distances.

8.      Despite notice and knowledge of the Engine Defect from the numerous consumer complaints it has received, information received from Honda dealerships, pre-sale durability testing, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records, Honda has

not recalled the Class Vehicles to repair the Engine Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse its customers who have incurred out of pocket expenses to repair the Engine Defect.

9.      As a result of Defendants' unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

10.      Had Plaintiffs and other Class members known about the Engine Defect at the time of purchase or lease, they would not have purchased or leased the Class Vehicles, or would have paid substantially less for the Class Vehicles.

11.      As a result of the Engine Defect and the considerable monetary costs associated with attempting to repair such defect, Plaintiffs and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Honda's conduct.

12.      Accordingly, Plaintiffs bring this action to redress Defendants' violations of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), California's Consumer Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), and also to seek recovery for Defendants' breach of express warranty,

breach of implied warranty, common law fraud, breach of the covenant of good

faith and fair dealing and, alternatively, unjust enrichment.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are

100 or more class members, (ii) there is an aggregate amount in controversy

exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal

diversity because at least one plaintiff and one defendant are citizens of different

states. This Court has supplemental jurisdiction over the state law claims pursuant

to 28 U.S.C. § 1367.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391

because Defendants transact business in this district, are subject to personal

jurisdiction in this district, and therefore are deemed to be citizens of this district.

Additionally, Defendants have advertised in this district and have received

substantial revenue and profits from their sales and/or leasing of Class Vehicles in

this district; therefore, a substantial part of the events and/or omissions giving rise

to the claims occurred, in part, within this district.

15.     This Court has personal jurisdiction over Defendants because they

have conducted substantial business in this judicial district, and intentionally and

purposefully placed Class Vehicles into the stream of commerce within the

districts of Minnesota and throughout the United States.

## THE PARTIES

**Plaintiff Troy Fath**

16.     Plaintiff Troy Fath is a citizen of the State of Minnesota and resides in
Hermantown, Minnesota.

17.     In or around July 2017, Plaintiff Fath purchased a new 2017 Honda
CR-V with a 1.5-liter Earth Dreams engine from Luther St. Cloud Honda, an
authorized Honda dealer and repair center located in Waite Park, Minnesota.

18.     Plaintiff purchased (and still owns) this vehicle, which is used for
personal, family and/or household uses. His vehicle bears Vehicle Identification
Number: 5J6RW2H83HL049967.

19.     On or about January 10, 2018, with approximately 5,200 miles on the
odometer, Plaintiff Fath's wife was traveling in the vehicle with their young
daughter. Suddenly, and without warning, the vehicle went into limp mode and the
warning lights on the dashboard illuminated. Plaintiff's wife immediately pulled
over and contacted Plaintiff Fath.  As a result, Plaintiff Fath towed the vehicle to
Krenzen Honda, an authorized Honda dealer and repair center located in Duluth,
Minnesota for diagnosis and repair.  The service advisor showed Plaintiff Fath that
the engine oil level in the vehicle was excessively high.  After having the vehicle
for approximately two weeks, Krenzen Honda replaced the engine oil and filter.

20.     In or around February 2018, with approximately 6,800 miles on the

odometer, Plaintiff Fath noticed a smell of gasoline emanating from and within his vehicle.  As a result, on or about February 20, 2018, he again presented his vehicle to Krenzen Honda for diagnosis and repair.  Krenzen Honda diagnosed the cause as "GAS SMELL" and changed the engine oil and filter at no charge.

21.     In or around April 2018, with approximately 7,600 miles on the odometer, Plaintiff Fath noticed the engine oil in his vehicle was over the full mark.  As a result, on or about April 10, 2018, he again presented his vehicle to Krenzen Honda.  Krenzen Honda diagnosed the cause as "OIL OVER FULL" and changed the engine oil and filter at no charge.  The technician also included the following comments on the service invoice: "CHANGED OIL AND FILTER. OIL WAS ABOUT 1QT OVER FULL. HONDA IS IN THE PROCESS OF CREATING A SOLUTION."

22.     In or around May 2018, with approximately 8,900 miles on the odometer, Plaintiff Fath noticed the engine oil in his vehicle was contaminated with fuel.  As a result, on or about May 25, 2018, he again presented his vehicle to Krenzen Honda.  Krenzen Honda diagnosed the cause as "FUEL IN OIL" and changed the engine oil and filter at no charge.  The technician also included the following comments on the service invoice: "lof oil and filter change completed oil was 9mm over full."

23.     Plaintiff has previously contacted Defendants regarding the oil

dilution and fuel smell in his vehicle.  Defendants have acknowledged that a

problem exists but there is currently no fix for the issue.

24.     Plaintiff Fath has suffered an ascertainable loss as a result of

Defendants' omissions and/or misrepresentations associated with the Engine

Defect, including, but not limited to, out of pocket loss associated with the Engine

Defect and future attempted repairs and diminished value of his vehicle.

25.     None of the Defendants, or any of their agents, dealers or other

representatives informed Plaintiff of the existence of the Engine Defect prior to

purchase.

**Plaintiff Vincent Puma**

26.     Plaintiff Vincent Puma is a citizen of the State of Florida and resides

in St. Augustine, Florida.

27.     In or around November 2015, Plaintiff Puma purchased a new 2016

Honda CR-V with a 2.4-liter Earth Dreams engine from Coggin Honda of St.

Augustine ("Coggin Honda"), an authorized Honda dealer and repair center located

in St. Augustine, Florida.

28.     Plaintiff purchased (and still owns) this vehicle, which is used for

personal, family and/or household uses. His vehicle bears Vehicle Identification

Number: 2HKRM3H39GH504975.

29.     On or about October 31, 2016, with approximately 2,900 miles on the

odometer, Plaintiff Puma smelled gasoline in the engine's oil and noticed an increase in fluid level on the vehicle's oil dipstick. As a result, Plaintiff Puma presented his vehicle to Coggin Honda for diagnosis and repair. The service advisor showed Plaintiff Puma that the gasoline smell in the vehicle's engine oil was similar to other new CR-V vehicles located at the dealership. The dealership then replaced the engine oil and filter at a charge of $49.95 to Plaintiff Puma. Coggin Honda did not address or document the increased fluid level regarding the vehicle's engine oil.

30.     On or about September 22, 2017, with approximately 4,760 miles on the odometer, Plaintiff Puma again smelled gasoline in the engine's oil and noticed an increase in fluid level on the vehicle's oil dipstick. As a result, Plaintiff Puma presented his vehicle to Coggin Honda for diagnosis and repair. On this occasion, and per the notes contained on the service invoice, the Coggin Honda technician noted: "OIL SMELLS NORMAL TO ME AT THIS TIME."  Coggin Honda; however, did not provide an explanation for the increase in fluid level related to the vehicle's engine oil.  The dealership then replaced the engine oil and filter at a charge of approximately $31.12 to Plaintiff Puma. Coggin Honda did not address or document the increased fluid level regarding the vehicle's engine oil.

31.     In or around April 2018, with approximately 6,300 miles on the odometer, Plaintiff Puma again noticed a smell of gasoline when checking the oil

and also that the oil level had again increased.  As a result, Plaintiff Puma again

presented his vehicle to Coggin Honda for diagnosis and repair.  On this occasion,

and per the notes contained on the service invoice, Coggin Honda acknowledged

that "REMNANT FUEL ODOR ON THESE VEHICLES ARE CREATED BY

DIRECT INJECTION FUEL SYSTEM."  Coggin Honda; however, did not

provide an explanation for the increase in fluid level related to the vehicle's engine

oil.  As a result, Coggin Honda changed the engine oil and filter at no charge.  At

this time, Coggin Honda also informed Plaintiff Puma that the narrow design of the

vehicle's crankcase would show increased fluid levels.

32.    Plaintiff Puma has suffered an ascertainable loss as a result of

Defendants' omissions and/or misrepresentations associated with the Engine

Defect, including, but not limited to, out of pocket loss associated with the Engine

Defect and future attempted repairs and diminished value of his vehicle.

33.    None of the Defendants, or any of their agents, dealers or other

representatives informed Plaintiff of the existence of the Engine Defect prior to

purchase.

**Plaintiff Higinio Bautista**

34.    Plaintiff Higinio Bautista is a citizen of the State of California and

resides in Lake Forest, California.

35.     In or around July 2017, Plaintiff Bautista purchased a new 2016 Honda Civic with a 1.5-liter Earth Dreams engine from Norm Reeves Honda, ("Reeves Honda"), an authorized Honda dealer and repair center located in Lake Forest, California.

36.     Plaintiff purchased (and still owns) this vehicle, which is used for personal, family and/or household uses. His vehicle bears Vehicle Identification Number: 2HGFC1F94GH649417.

37.     On or about June 28, 2017, with approximately 13,500 miles on the odometer, Plaintiff Bautista was operating his vehicle when he suddenly heard a loud ticking noise from the engine compartment. The vehicle then stalled and the warning lights on the dash illuminated. Thereafter, Plaintiff Bautista's vehicle would not start or stay running.

38.     As a result, Plaintiff Bautista had his vehicle towed to Penske Honda ("Penske Honda"), an authorized Honda dealer and repair center located in Ontario, California, for diagnosis and repair. Penske Honda concluded that the fuel within the fuel tank of the vehicle was contaminated and recommended Plaintiff Bautista pay to remove the gas tank, clean and reinstall, as well as, fuel system treatment service, and also replacement of the fuel injectors and high-pressure fuel pump.  Plaintiff Bautista declined these services.  Thereafter, he paid Penske

Honda a $125.00 fee for diagnosis and had his vehicle towed to Reeves Honda.

39.    On or about August 11, 2017, Reeves Honda determined that the intake camshaft within the engine of Plaintiff's vehicle had broken. Reeves Honda, with assistance of Defendant's technical hotline, determined that plastic debris at the head gasket area of Plaintiff's vehicle had caused the camshaft failure. As a result, neither Defendant nor Reeves Honda was willing to offer warranty coverage for the engine repair. Plaintiff was forced to pay $2,087.00 to Reeves Honda for the repair of his vehicle related to the Engine Defect.

40.    Upon information and belief, the engine failure experienced by Plaintiff Bautista was a result of the Engine Defect alleged in the Class Vehicles.

41.    Plaintiff Bautista continues to notice a smell of gasoline when checking the oil, as well as, an increase in oil level within the vehicle.

42.    Plaintiff Bautista has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Engine Defect, including, but not limited to, out of pocket loss associated with the Engine Defect and future attempted repairs and diminished value of his vehicle.

43.    None of the Defendants, or any of their agents, dealers or other representatives informed Plaintiff of the existence of the Engine Defect prior to purchase.

**The Defendants**

44.     Defendants Honda North America, American Honda, and Honda Motor Company are automobile design, manufacturing, distribution, and/or servicing corporations doing business within the United States. Furthermore, Defendants design, manufacture, distribute, market, service, repair, sell and lease passenger vehicles, including the Class Vehicles.

45.     Defendant Honda Motor Company, Ltd., 2-1-1, Minami-Aoyama, Minato-ku, Tokyo 107-8556, Japan is an automobile design, manufacturing, sale, leasing, distribution, and servicing corporation organized under the laws of Japan. Honda Motor Company is the parent corporation of American Honda and Honda North America.

46.     Honda North America has its principal place of business at 700 Van Ness Avenue, Torrance, California 90501-1486. American Honda has its principal place of business at 1919 Torrance Boulevard, Torrance, California 90501-2746.

47.     Upon information and belief, Defendant Honda Motor Company communicates with Defendants Honda North America and American Honda concerning virtually all aspects of the Honda products it distributes within the United States.

48.     Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the engines within the Class Vehicles were performed exclusively by Defendants.

49.    Upon information and belief, Defendants develop the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles.

50.    Defendants Honda North America, American Honda, and Honda Motor Company engage in continuous and substantial business in Minnesota.

## TOLLING OF STATUTES OF LIMITATION

51.    Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Engine Defect until shortly before this class action litigation was commenced.

52.    Defendants were and remain under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of the Class Vehicles and that it will require costly repairs and diminishes the resale value of the Class Vehicles. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

A.    **The Engine Defect within the Class Vehicles.**

53.    The Honda CR-V was introduced in the United States in 1996.  Honda

first introduced the Earth Dreams 2.4L engine in the model year 2015 CR-V.

Production of the fifth generation CR-V began in late 2016, with sales beginning

on or about December 21, 2016 as a 2017 model year.  The MY 2017-18 CR-V

vehicles were offered in "EX", "EX-L" and "Touring" trim levels and came

standard with the 1.5L turbocharged Earth Dreams engine while the "LX" trim

level came standard with the 2.4 Earth Dreams engine. (CR-V Class Vehicles).

54.    The Honda Civic was introduced in the United States in 1972.  The

tenth-generation Civic sedan, the subject of this matter, was first unveiled in

September 2015, for the 2016 model year. The MY 2016-18 Civic vehicles were

offered in "EX-T", "EX-L", "Touring" and "Si" trim levels and came standard

with the 1.5L turbocharged Earth Dreams engine while the "EX" and "LX" trims

came standard with the 2.0L Earth Dreams engine. (Civic Class Vehicles).

55.    Earth Dreams Technology is Honda's latest generation of engines

which attempt to increase fuel-efficiency and reduce environmental impact.  Honda

attempts to accomplish these goals in the Class Vehicles by employing variable

timing control, direct injection technology and use of an Atkinson cycle.  Upon

information and belief, Honda has also implemented extensive friction reduction

measures including reduced tension piston and oil control rings. The below picture

depicts the 1.5L Earth Dreams engine contained in some of the Class Vehicles.



56.     As background, the engines contained in the Class Vehicles use four reciprocating pistons to convert pressure into a rotating motion. Gasoline is mixed with air in the combustion chambers of the engine. To generate such rotating motion, a four-step sequence is used (the "Combustion Cycle"). First, the intake stroke begins with the inlet valve opening and a vaporized fuel mixture is pulled into the combustion chamber.  Second, in most vehicles the compression stroke would begin with the inlet valve closing and the piston beginning its movement upward, compressing the fuel mixture in the combustion chamber.  However, in the Class Vehicles, the Atkinson cycle modifies that process by leaving the intake valve open for the first moments of the compression stroke, as the piston travels

toward top dead center, which effectively lowers the compression ratio and reduces

the force on the piston during the power stroke. Third, the power stroke begins

when the spark plug ignites the fuel mixture, expanding the gases and generating

power that is transmitted to the crankshaft. And fourth, the exhaust stroke begins

with the exhaust valve opening and the piston moving back up, forcing the exhaust

gases out of the cylinder. The exhaust valve then closes, the inlet valve opens, and

the Combustion Cycle repeats itself. A diagram of a Combustion Cycle is below:



57.     In the Class Vehicles, a mixture of the unburned air and gasoline is

pulled down by the piston, slipping by the piston and oil control rings, and going

directly into the crankcase, which is the protective cover that insulates the

crankshaft. This is commonly referred to as "blow-by" and it is undesirable

because the unburned gasoline in the mixture enters the engine's crankcase and can

significantly contaminate the engine oil contained in the oil pan.

58.     To reduce the risk of crankcase contamination and improve vehicle emissions, the positive crankshaft ventilation ("PCV") system was invented in the early 1960s. The PCV system involves the recycling of these unwanted gases through a valve (the "PCV valve") and circulates them back into the intake manifold, where they are pumped back into the cylinders for another chance at being burned during the combustion cycle.  A diagram of a typical PCV system is below:



59.     In the Class Vehicles, the PCV system is simply inadequate to prevent and address contamination of the crankcase.  This is because the volume of

contamination is so massive due to, *inter alia*, (1) the increased amount of unburned fuel in the combustion chamber; and (2) increased blow-by as a result of the reduced piston and oil control ring tensions in an effort to decrease overall friction within the engine in the hopes of gaining greater MPG.

60.     In the Class Vehicles, the engine pistons are connected to the crankshaft via the connecting rods. As the connecting rods moves up and down during the Combustion Cycle, this causes the crankshaft to rotate, ultimately resulting in power to the drive wheels of the vehicle. During this cycle, the crankshaft rotates many thousands of times per minute within each connecting rod. In order to reduce friction and prolong longevity, this design utilizes a bearing placed between each connecting rod and multiple crankshaft surfaces. As a result, the connecting rod bearings allow the crankshaft to rotate within the connecting rods during the Combustion Cycle. An exemplar diagram of the piston, connecting rod, connecting rod bearing and crankshaft is shown below:





Figure 3-70.—Connecting rod bearings.

61.    When the Class Vehicles are in operation, engine oil is used to

lubricate the piston, cylinder wall, connecting rod bearings, main bearings and

other rotating and moving components as the pistons move up and down through

the four-stroke sequence. Engine oil is necessary to reduce wear on moving parts

throughout the engine, improve sealing, and cool the engine by carrying away heat

from the moving parts. Engine oil also cleans and transports contaminants away

from the engine to the engine oil filter. Oil is pumped and pressurized throughout

the engine by the oil pump. The oil pump draws oil from the oil pan, located

underneath the pistons and crankshaft. The oil pump forces engine oil through the

oil filter and then through passages in the engine to properly lubricate and reduce

friction in internal moving engine components. The oil then returns to the oil pan

through small drainage holes located throughout the engine where it will be

recirculated by the oil pump. Below is a diagram illustrating the typical path and

channels of engine oil lubrication in an overhead cam engine:



62.    The Engine Defect inherent in the Class Vehicles results in the build-

up of non-combusted fuel within the engine's oiling system.  As the fuel builds up

within the oiling system, the engine oil is diluted and begins to lose its lubricating

properties.  This fuel-contaminated engine oil no longer properly coats the bearing surfaces, compromising the integrity of the oil barrier between the bearings and the corresponding metal parts which they are designed to protect. When the Engine Defect manifests, it results in excessive and frequent contact between the connecting rods and connecting rod bearings, as well as the crankshaft and main bearings. This contact causes accelerated wear within the engine and on the bearing surfaces in the Class Vehicles.

63.     Additionally, the Engine Defect causes the crankcase of the Class Vehicles to become overfilled with fuel-contaminated oil. As a result, the engine oil level can come in contact with the crankshaft. When this happens, it is turned (or aerated) by the crankshaft thereby becoming oxygenated and of a foamy quality.  This oxygenated oil mixture fails to lubricate effectively and will often result in overheating as well as damage to the engine's moving parts.  In some cases, there may even be a loss of oil pressure since aerated oil can result in oil pump cavitation.  Per the below diagrams from the Owner's Manual of a Class Vehicle, Honda is well aware that excessive oil in the crankcase will result in damage to the Class Vehicles:[2]

---

[2]

http://techinfo.honda.com/rjanisis/pubs/QS/AH/ATLA1717OG/enu/ATLA1717O
G.PDF





64.     Regardless of this known risk, Honda instructs Class Members to continue to drive their Class Vehicles and simply change the engine oil more frequently, and in some instances recommending class members change their Vehicle's oil every 500 miles. This results in a previously undisclosed increase in

the cost of maintenance for Class members due to the Engine Defect.

Additionally, this results in a greater impact on the environment due to the

necessary and frequent disposal of contaminated engine oil due to the Engine

Defect.

**B.**   **Honda's Knowledge of the Engine Defect**

65.   After numerous reports of high engine oil levels and fuel smells

reported by Honda customers in northern China, where cooler temperatures are

common, Honda ordered a recall of 350,000 vehicles in February 2018.

66.   In approximately March 2018, Honda halted the sales of the Class

Vehicles in China, after a Chinese watchdog rejected Honda's plan to recall the

vehicles to attempt to fix the Engine Defect.[3]   "The company needs to improve the

recall plans further," the watchdog said, suggesting Honda could extend the

warranty coverage period of the affected vehicles.[4]   Until a new recall is agreed

upon, Honda issued a stop-sale on all new CR-Vs in China.

67.   Similarly, on February 28, 2018 Honda Canada, Inc. sent a notice to

its Canadian dealerships regarding complaints of misfires and oil pressure

warnings in the Class Vehicles.   Honda Canada further advised that these issues

have "been associated with high engine oil level due to fuel or water

---

[3] https://www.reuters.com/article/us-honda-china-recall/honda-stops-selling-new-cr-vs-in-china-after-recall-plan-rejected-idUSKCN1GE1P8 (last visited My 8, 2018)
[4] http://www.autonewschina.com/en/article.asp?id=17301 (last visited May 8, 2018)

contamination."  A copy of this notice is below:



68.     Despite acknowledging the Engine Defect in China, Honda has not done so in the United States and continues to deny the existence of the Engine Defect to Class Members.

69.     Furthermore, Honda's failure to notify the general public or the owners or lessees of the Class Vehicles of the Engine Defect is particularly egregious because after the Engine Defect manifests, the Class Vehicles may suffer catastrophic engine failure while in use, resulting in a very dangerous situation (and can even be left stranded) placing the driver and occupants at an increased risk of injury.

70.     Engines are designed to function for periods (and mileages)

substantially in excess of those specified in Defendants' warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the engine will fail for significantly longer than the limited times and mileages identified in Defendants' warranties.

71.     Honda markets its vehicles as particularly reliable when compared to the competition.[5]

72.     Automobiles must incorporate designs that are able to withstand foreseeable usage conditions. A vehicle can suffer extensive damage and costly repairs from customary environmental and usage conditions when a vehicle suffers from such a defect.

73.     In many instances, consumers have incurred and will continue to incur expenses for repair and/or replacement of the engines despite such Engine Defect having been contained in the Class Vehicles when manufactured by Defendants.

74.     Upon information and belief, Defendants, through (1) their own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal pre-sale durability testing and TSBs, and (5) other various sources, were well aware of the Engine Defect but failed to notify customers of the nature and extent of the problems with Class Vehicle engines or

---

[5] *See, e.g.,* https://automobiles.honda.com/awards (last visited April 10, 2018).

to provide any adequate remedy.

75.     Defendants failed to adequately research, design, test and/or manufacture the engines and PCV systems in the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

76.     Defendants are experienced in the design and manufacture of consumer vehicles. As experienced manufacturers, Defendants conduct tests, including pre-sale durability testing, on incoming components, including the engines, to verify that the parts are free from defect and align with Defendants' specifications.

77.     Defendants' presale durability testing includes five metrics that allegedly "ensure high quality" by conducting "comprehensive quality assurance activities from the dual perspectives of design and manufacturing."[6] They admit that their "production departments implement manufacturing controls to keep variability within applicable standards based on drawings and develop production processes so that all workers can continue to achieve a consistent level of quality." Thus, Defendants knew or should have known of the Engine Defect through their

_____

6

https://web.archive.org/web/20170719214241/http://world.honda.com/sustainability/quality/initiative/design-development-production/ (site indexed by web.archive.org on July 19, 2017) (last visited May 8, 2018). The quotes in paragraphs 76-83 all refer to this webpage. *See also* Exhibit A, pgs. 54-55 and 60.

comprehensive quality assurance activities and manufacturing controls.

78.    First, Defendants' "engineers utilize a database of measures and techniques previously used to prevent market quality issues and other information as they communicate closely with manufacturing departments during the initial development stage. Product function, performance and quality assurance initiatives are committed to writing and are shared to ensure efforts are coordinated with production departments' process assurance activities and to coordinate quality assurance initiatives."

79.    Second, "Honda's production departments establish manufacturing control items and criteria for each part, process, and operation to prevent product quality issues."  These controls are explicitly put in place to "prevent product quality issues" whereby Defendants' engineers "use these manufacturing control items and criteria to verify manufacturing variability as they work to prevent quality issues."

80.    Third, for outsourced parts, Defendants visit their suppliers' manufacturing facilities to conduct quality audits based on the "'Three Reality Principle,' which emphasizes 'going to the actual place,' 'knowing the actual situation' and 'being realistic.'" Defendants use "[e]xperts in the development and production of individual parts visit manufacturing facilities and conduct audits of suppliers' quality systems and their implementation."

81.     Fourth, and perhaps most importantly, Defendants assure long-term

reliability of its parts and vehicles through "meticulous durability testing."

Defendants state the following about this metric (emphasis added):

> Honda subjects new and redesigned models to a rigorous regimen of
> long-distance durability testing before beginning mass production to
> verify that there are no quality issues.
>
> *We also disassemble vehicles used in the test drives into every single
> part and verify that there are no quality issues through a process
> consisting of several thousand checks.* By accumulating data on the
> issues discovered through these test drives and detailed inspections as
> well as associated countermeasures, we are able to ensure a high level
> of quality and reliability.

82.     Fifth, Defendants developed and implemented the "Line End Tester,"

an inspection and diagnostic system, that is used "in shipping quality inspections of

all electronic control systems, from switches and instruments to air conditioner,

audio, engine and transmission operations."

83.     Through these quality control metrics, Defendants knew or should

have known that the engines in the Class Vehicles were defective.

84.     Lastly, as explained in Honda's Sustainability Report:

> When Honda determines that an issue occurs with a product that requires
> market action, it quickly reports the issue to government authorities in
> accordance with countries' regulations and contacts owners by means of
> direct mail from dealers or by telephone to provide information about how
> they can receive free repairs. Associated information is also provided on
> Honda's website and through the news media as necessary.

85.     Despite such assurances and procedures, Defendants have not

contacted Class Members by direct mail or telephone to inform them how they can receive free repairs related to the Engine Defect within the United States. Additionally, upon information and belief, Defendants have also not provided associated information regarding the Engine Defect on its website or through the news media.

86.     Per the below, Defendants also expressly warranted the Class Vehicles to be free from defects for a period of three years or 36,000 miles under the New Vehicle Limited Warranty and 5 years or 60,000 miles under the Powertrain Limited Warranty.[7] Both warranties are applicable to the Engine Defect; however, Defendants have failed to correct the issue.

---

[7]http://owners.honda.com/Documentum/Warranty/Handbooks/2018_Honda_Warranty_Basebook_AWL05251_FINAL.pdf

## New Vehicle Limited Warranty

### Time and Mileage Period

This warranty begins on the date the vehicle is put into use in one of the following ways:

- The vehicle is delivered to the first purchaser by a Honda automobile dealer.
- The vehicle is leased.
- The vehicle is used as a demonstrator or company vehicle.

Your vehicle is covered for 3 years or 36,000 miles, whichever comes first. Some parts may have separate coverage under other warranties described in this book.

### Warranty Coverage

Honda will repair or replace any part that is defective in material or workmanship under normal use. See Proper Operation on page 35. All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires.

### This New Vehicle Limited Warranty Does Not Cover:

- Normal wear or deterioration of any part.
- Cleaning and polishing.
- The adding of any fluids, unless they are needed as part of a warranty repair.
- Broken, chipped, or scratched window glass unless it is due to a defect in material or workmanship.
- Any item concerning your vehicle's general appearance that is not due to a defect in material or workmanship. Cosmetic flaws or minor damage to the body, paint, or other items may occur during manufacture or shipping of your vehicle. If you find any uncorrected flaws or damage on your new vehicle, notify the dealer as soon as possible after delivery.
- Expendable maintenance items (such as filters, or brake pads/linings) when replaced due to normal wear or customer abuse.

### Limited Warranty Coverage

- Original equipment batteries for key fobs and remotes are covered for the first 6 months of ownership.
- Original equipment wiper blade inserts are covered for the first 6 months of ownership.
- Wheel balancing and wheel alignment are covered for the first year or 12,000 miles, whichever comes first, unless required as part of a warranty repair.
- Air conditioner refrigerant is covered for the first 2 years or 24,000 miles, whichever comes first, unless required as part of a warranty repair.

## Powertrain Limited Warranty

### Time and Mileage Period

This warranty's coverage begins on the same date as the New Vehicle Limited Warranty (see page 9).

Your powertrain is covered for 5 years or 60,000 miles, whichever comes first.

Some powertrain parts may have additional coverage under other warranties described in this book.

### Warranty Coverage

Honda will repair or replace any part that is defective in material or workmanship under normal use. See Proper Operation on page 35. All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this Powertrain Limited Warranty expires.

### Parts Covered by the Powertrain Warranty

Your vehicle may not be equipped with all the parts listed. Other parts may be covered. Contact an authorized Honda automobile dealer or Honda Automobile Customer Service (see inside front cover of this booklet) for further information.

#### Engine

Cylinder block and head and all internal parts, timing gears and gaskets, timing chain/belt and cover, flywheel, valve covers, oil pan, oil pump, intake and exhaust manifolds, engine mounts, engine/powertrain control module, water pump, fuel pump, seals and gaskets.

#### Transmission and Transaxle

Case and all internal parts, torque converter, transfer case and all internal parts, transmission/powertrain control module, seals and gaskets.

#### Front-Wheel-Drive System

Final drive housing and all internal parts, driveshafts, constant velocity joints, front hubs and bearings, seals and gaskets.

#### Rear-Wheel-Drive System

Differential housing and all internal parts, propeller shafts, universal joints, driveshafts, constant velocity joints, rear hubs and bearings, seals and gaskets.

For a list of items not included in this warranty, please refer to page 9.

87.   Buyers, lessees, and other owners of the affected Vehicles were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of the Vehicles. Had these buyers and lessees known of the defect and the potential harm, they would have taken steps to avoid that harm and/or would have paid less for the Vehicles than the amounts they actually paid, or would not have purchased the Vehicles.

## C.   **Complaints by Other Class Members.**

88.   Plaintiffs' experiences are by no means an isolated or outlying occurrence. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Engine Defect within the Class Vehicles.[8]

89.   Class Vehicle owners have publicly complained to the United States government about the Engine Defect in Class Vehicles since the vehicle has been released. The Office of Defects Investigation (ODI) is an office within the National Highway Traffic Safety Administration (NHTSA). ODI conducts defect

---

[8] *See* http://www.crvownersclub.com/forums/98-2012-2016-official-specs-features-etc-gen-4/110761-2016-honda-crv-gas-smell-fills-cabin-very-strong.html (last visited April 10, 2018); and http://www.carproblemzoo.com/honda/cr-v/other-fuel-system-problems.php (last visited April 10, 2018).

investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways. [9] All automobile manufacturers routinely monitor and analyze NHTSA complaints because this information is used in determining if a recall should be issued.

90.     The following is just a small sampling of the many complaints submitted to ODI by Honda CR-V owners. These publicly available complaints, filed as early as March 2016, evidence Defendants' prior knowledge of the Engine Defect, the negative experiences encountered by Class Members, and the financial burden this places on them.

NHTSA ID Number: 10864030

Date of Incident: 03/22/2016

Consumer Location: FOX POINT, WI

Vehicle Identification No. (VIN): 5J6RM4H74GL...

SUMMARY:

THE CABIN OF MY BRAND NEW VEHICLE FILLS WITH GAS FUMES RANDOMLY WHILE THE ENGINE IS RUNNING. THE FUMES FILL THE CABIN WHILE IDLING, STARTING, AND DRIVING DOWN THE ROAD. THE FUMES ARE VERY STRONG AND I DO NOT FEEL SAFE DRIVING THIS VEHICLE FOR ANY DISTANCE. THE HONDA DEALERSHIP SERVICE DEPARTMENT AND THE HONDA TECH CENTER ARE AWARE OF THE PROBLEM BUT DO NOT HAVE A REMEDY.

NHTSA ID Number: 10872460

---

[9] *See* https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm (last visited April 10, 2018). Indeed, automobile manufacturers are required by law to report any potential safety defects to the United States government.

Date of Incident: 05/01/2016

Consumer Location: ERIE, PA

Vehicle Identification No. (VIN): 2HKRM4H55GH...

SUMMARY:

VEHICLE SMELLS LIKE GAS INSIDE THE CABIN AT IDLE. ALSO FILLS GARAGE WITH THE ODOR WHEN PARKED OVERNIGHT.


NHTSA ID Number: 11084545

Date of Incident: 09/13/2016

Consumer Location: WAUWATOSA, WI

Vehicle Identification No. (VIN): 2HKRM4H73GH...

SUMMARY:

GAS FUMES IN PASSENGER CABIN. WE GET GAS FUMES IN THE PASSENGER CABIN ON A REGULAR BASIS. NO GAS LEAKING ON GROUND THAT WE CAN SEE. HAPPENS MORE OFTEN AFTER CAR HAS BEEN IDLING FOR A BIT. GAS FUMES STAY IN CABIN WHILE DRIVING.


NHTSA ID Number: 10969832

Date of Incident: 10/01/2016

Consumer Location: SAVAGE, MN

Vehicle Identification No. (VIN): 5J6RM4H42GL...

SUMMARY:

THE INSIDE OF MY 2016 CR-V SMELLS LIKE GAS, MY FORMER 2015 HAD THE SAME PROBLEM. THE DEALERSHIP HAS NO CLUE WHAT IS WRONG, THEY TOLD ME TO SWITCH BRAND OF GAS, IT DID NOTHING. ALSO THE SEATS VIBRATE WHILE IDLING, AGAIN THE DEALERSHIP DOESN'T KNOW WHAT TO DO.


NHTSA ID Number: 10915982

Date of Incident: 10/13/2016

Consumer Location: MIDWAY, GA

Vehicle Identification No. (VIN): 3CZRM3H5XGG...

SUMMARY:

UPON INITIAL START THE ENTIRE CABIN OF THE VEHICLE SMELLS OF RAW GAS, COMING IN THROUGH VENTS. THIS IS ESPECIALLY WORSE WHEN IN REVERSE SUCH AS BACKING OUT OF THE DRIVEWAY, ALSO THIS IS PRESENT WHEN IDLING IN PARK OR DRIVE, SUCH AS SITTING AT A STOPLIGHT. THE SMELL IS SO STRONG YOU ARE FORCED TO OPEN THE WINDOWS UNTIL THE VEHICLE IS MOVING AGAIN.


NHTSA ID Number: 10968556

Date of Incident: 12/27/2016

Consumer Location: PEWAUKEE, WI

Vehicle Identification No. (VIN): 5J6RM4H98GL...

SUMMARY:

THE VEHICLE IS EMITTING A VERY STRONG GAS ODOR! IT IS MOST NOTICEABLE WHEN I OPEN THE DOOR FROM THE HOUSE TO THE GARAGE (EVERY TIME.) THE ENTIRE GARAGE SMELLS LIKE GAS. IT IS NOTICEABLE WHEN STOPPED AT A TRAFFIC LIGHT. IT IS NOTICED WHEN COMING BACK TO THE CAR AFTER HAVING GONE INTO A STORE FOR A QUICK ERRAND(S). I TOOK THE CAR TO A HONDA DEALER. THEY KEPT IT OVERNIGHT AND FOR MOST OF A DAY. WHEN I CAME IN I WAS TOLD THAT IT WAS A JUST A NEW CAR SMELL. HOWEVER, THE SMELL CONTINUES AND SEEMS TO BE GETTING WORSE.


NHTSA ID Number: 10954891

Date of Incident: 02/10/2017

Consumer Location: RAVENNA, OH

Vehicle Identification No. (VIN): 2HKRM3H38GH...

SUMMARY:

PURCHASED A 2016 CR-V IN NOVEMBER 2016 AND WITHIN A DAY THE CABIN OF OUR BRAND NEW VEHICLE FILLS WITH NOXIOUS GAS FUMES FROM A COLD START. THE FUMES ARE VERY STRONG, AFTER DRIVING THE CAR THE FUEL SMELL WILL LESSEN AND ON OCCASION THE SMELL WILL DISSIPATE COMPLETELY. THE SMELL WAS SO STRONG WE HAD TO ROLL THE WINDOWS DOWN. THE VEHICLE HAS BEEN IN THE SERVICE DEPARTMENT THREE TIMES. FIRST TIME THEY COULD NOT DUPLICATE THE SMELL. THIS ATTEMPT WAS NOT FROM A COLD START. SECOND TIME WE LEFT THE CAR OVERNIGHT SO THEY COULD EVALUATE FROM A COLD START. THE SERVICE TECH STATED HE COULD SMELL THE ODOR IN THE CABIN. HONDA TECH WAS CALLED BY THE TECHNICIAN AND I HAD TO COMPLETE AN ONLINE QUESTIONNAIRE ABOUT THE COMPLAINT. THE SERVICE WRITER SAID AT THIS TIME THERE IS NO FIX FOR THE PROBLEM AND WE COULD TAKE OUR CAR HOME AND WAIT FOR HONDA TO REPLY. THIRD TIME WE BASICALLY SAID WE DID NOT WANT THIS CAR IF YOU CANNOT FIX IT AND THEY GAVE US A LOANER CAR, A 2015 CR-V WHICH DOES NOT HAVE ANY ODOR. STILL WAITING ON THE DEALERSHIP TO CALL US WITH A SOLUTION. THIS WAS OUR FIRST HONDA PURCHASE. REALLY WISH I WOULD HAVE STUCK WITH MY PREVIOUS CAR MANUFACTURER.


NHTSA ID Number: 10956335

Date of Incident: 02/22/2017

Consumer Location: MADISON, WI

Vehicle Identification No. (VIN): 5J6RM4H59GL...

SUMMARY:

THE VEHICLE HAS A VERY STRONG SMELL OF FUEL (GASOLINE) IN THE PASSENGER CABIN AFTER THE ENGINE HAS WARMED UP. IT IS ESPECIALLY STRONG WHEN THE CAR HAS BEEN REFUELED, WHEN THE ENGINE IS WARM AND YOU ARE MAKING FREQUENT STOPS OR ARE BACKING UP. HONDA SERVICE STAFF STATE HONDA AMERICA IS AWARE OF THE COMPLAINTS WITH THE 2016 CRV BUT THEY HAVE NOT IDENTIFIED A PROBLEM NOR DO THEY HAVE A

FIX. THEY DID HAVE ME COMPLETE A QUESTIONAIRE AT THE
DEALERSHIP REGARDING THE PROBLEM AND THEY SAID HONDA
IS HAVING ENGINEERS LOOK INTO THE PROBLEM. IN THE MEAN
TIME, THE SMELL OF GASOLINE CAN BE SO STRONG THAT IT
MAKES ME NAUSEOUS AND GIVES ME A HEADACHE. I AM QUITE
SURE BREATHING IN THE SMELL OF TOXIC CHEMICALS IN A
CONFINED SPACE IS HAZARDOUS TO A PERSON'S HEALTH AND I
AM QUITE SURE THE HEAD OF HONDA WOULD NOT RIDE IN A
VEHICLE THAT WREEKS OF GASOLINE INSIDE. I HAVE HAD THIS
VEHICLE 3 MONTHS AND IT HAS 2156 MILES ON IT. IN THE
BEGINNING, I THOUGHT IT WAS EXHAUST FROM CARS IN TRAFFIC
AROUND ME. THEN I THOUGHT I MUST HAVE SPILLED GAS ON THE
GAS WHEN I FILLED THE TANK, BUT CLEARLY IT IS NOT EITHER OF
THESE ISSUES. THE GAS SMELL IS COMING FROM THE FUEL
SYSTEM OF THE CAR AND IT NOT SAFE TO RIDE IN IT. THE GARAGE
SMELLS LIKE GASOLINE AFTER THE CAR HAS BEEN SITTING IN IT
AND TURNED OFF. THE CAR DOES NOT USUALLY SMELL LIKE GAS
WHEN I FIRST TURN IT ON OR IF I DRIVE IT A VERY SHORT
DISTANCE. WHEN I DRIVE TO WORK (2 MILES) AND GET OUT AND
IT SITS FOR 8 HOURS, I DO NOT SMELL GAS WHEN I GO HOME AT
THE END OF THE DAY. IT IS WHEN THE CAR HAS BEEN DRIVEN FOR
15 OR MORE MINUTES AND MAKING MULTIPLE STOPS. THE
DEALERSHIP SAID THEY HAVE HAD OTHER CUSTOMERS WITH
SIMILAR COMPLAINTS BUT NO IDEA HOW TO FIX IT. MEANWHILE, I
HAVE A 3 MONTH OLD $28,000 VEHICLE I CANNOT DRIVE SAFELY.
IS THERE A WAY TO MEAUSURE NOXIOUS FUMES IN THE
PASSENGER CABIN?


NHTSA ID Number: 10957080

Date of Incident: 02/25/2017

Consumer Location: HATFIELD, PA

Vehicle Identification No. (VIN): 2HKRM4H59GH...

SUMMARY:

STRONG SMELL OF GAS IN MY NEW 2016 HONDA CR-V WHEN I
START IT UP AND IT SMELLS FOR AWHILE WHILE DRIVING IT THEN
WHEN I STOP AND START I SMELL IT ALL OVER AGAIN. I'M

WORRIED ABOUT THE SAFETY OF DRIVING THIS CAR. READ ONLINE A LOT OF 2016 HONDA CR-V OWNERS HAVE THE SAME ISSUE WITH NO RESOLVE AFTER TAKING IT TO THE HONDA DEALER. I'M TAKING MINE TO THE DEALER ON MONDAY BUT VERY WORRIED THIS COULD BE A SAFETY ISSUE THAT COULD INVOLVE A FIRE OR WORSE. I'M PLANNING ON DRIVING THIS VEHICLE ON A LONG TRIP THIS SUMMER NOW IM VERY CONCERNED FOR OUR SAFETY. VERY DISAPPOINTED IN HONDA AND PURCHASING THIS NEW VEHICLE. I BOUGHT A NEW VEHICLE SO I DO NOT HAVE CAR PROBLEMS.


NHTSA ID Number: 10992310

Incident Date May 28, 2017

Consumer Location GRAFTON, WI

Vehicle Identification Number 5J6RW2H86HL****

Summary of Complaint

FREQUENT NOXIOUS GAS FUMES IN THE CABIN OF THE VEHICLE.

OFTEN WHEN THE VEHICLE IS SITTING IDLE, OR STARTING, THERE IS A STRONG SMELL OF GAS IN THE CABIN.

THIS ISSUE BEGAN A COUPLE WEEKS AFTER PURCHASING THE VEHICLE (FEBRUARY 3) AND HAS HAPPENED MOST RECENTLY ON MAY 28. THE INCIDENT ON MAY 28 WAS SO TOXIC THAT I DEVELOPED A HEADACHE AND HAD TO OPEN ALL WINDOWS TO TRY TO RELIEVE THE ISSUE.


NHTSA ID Number: 11090099

Date of Incident: 07/20/2017

Consumer Location: LAFAYETTE, CO

Vehicle Identification No. (VIN): 7HKRW2H95HH...

SUMMARY:

STRONG FUEL SMELL (MIX OF GAS AND OIL) COMING FROM ENGINE SINCE WE PURCHASED VEHICLE. IT'S BEEN INTO

CERTIFIED DEALER FOR INSPECTIONS AND MINOR TWEAKS FOUR
TIMES ALREADY AND HONDA IS UNABLE TO REPAIR IT AS THEY
DON'T KNOW WHAT TO DO. WE HAVE TO DRIVE WITH WINDOWS
OPEN AND PARK CAR OUTSIDE OF OUR GARAGE DUE TO THE
FUMES. I'M NOW GETTING HEADACHES FROM LONGER DRIVES.

NHTSA ID Number: 11030624

Date of Incident: 09/20/2017

Consumer Location: Unknown

Vehicle Identification No. (VIN): Not Available

SUMMARY:

GAS SMELL LIKE OPEN CONTAINER IN CABIN WHILE STATIONARY
AT STOPLIGHT ALSO WHEN GARAGED OVERNIGHT NO FUEL ON
GROUND OBSERVED WHILE GARAGED

NHTSA ID Number: 11075842

Incident Date November 20, 2017

Consumer Location DULUTH, MN

Vehicle Identification Number 5J6RW2H5XHL****

Summary of Complaint

GAS IS MIXING IN THE OIL OF OUR NEW 2017 HONDA CR-V. THE 1.5
LITER ENGINE DOES NOT WARM UP SUFFICIENTLY IN COLD
WEATHER, RUNS RICH, AND LEAVES UN-COMBUSTED GAS IN THE
OIL. THIS TRIGGERS ENGINE WARNING LIGHTS AND REQUIRES
FREQUENT OIL CHANGES. ENGINE PERFORMANCE AND
DRIVABILITY SUFFER. THIS PROBLEM IS ALSO BEING REPORTED
ON SOCIAL MEDIA BY OTHER HONDA CR-V OWNERS WHO DRIVE
IN COLDER CLIMATES. WE ARE CONCERNED THAT IT IS CAUSING
LONG TERM DAMAGE TO THE ENGINE OF OUR NEW VEHICLE. I
CAUTION PROSPECTIVE BUYERS TO POSTPONE THE PURCHASE OF
A 2017 OR NEWER HONDA CR-V WITH THE 1.5 LITER ENGINE UNTIL

HONDA SOLVES TO THIS PROBLEM. THE FIFTH GENERATION CR-V IS AN EXCELLENT CAR IN MANY RESPECTS, BUT THIS IS A MAJOR PROBLEM. I CANNOT RECOMMEND THE CAR, PARTICULARLY TO THOSE WHO DRIVE IN COLDER CLIMATES, UNTIL A FIX IS FOUND.

REUTERS REPORTED IN FEBRUARY THAT HONDA HAS ANNOUNCED A RECALL OF 350,000 CR-V'S IN CHINA FOR WHAT APPEARS TO BE A SIMILAR ISSUE.

WE'VE DRIVEN OUR CAR FOR ABOUT SIX MONTHS, AND IT HAS LESS THAN 2,000 MILES ON IT. WE TYPICALLY USE THE CAR FOR SHORT DRIVES WITHIN THE CITY. OUR CAR WAS AT THE DEALER FOR OVER TWO WEEKS WHEN THE PROBLEM FIRST OCCURRED. A FIELD REP FROM HONDA WAS SENT OUT TO THE DEALER TO TRY TO ASSIST. SENSORS AND FUEL INJECTORS WERE REPLACED. THE OIL AND FILTER WAS CHANGED. AT THIS TIME OUR ENGINE HAD LESS THAN 1100 MILES ON IT.

THESE REPAIRS DID NOT CORRECT THE PROBLEM. IN MID-JANUARY THE ENGINE WARNING LIGHTS WERE TRIGGERED AGAIN. OUR DEALER NOTED THE SMELL OF GAS IN OUR OIL AND ONCE AGAIN CHANGED THE OIL AND FILTER. WE HAD LESS THAN 1500 MILES ON THE CAR FOR THIS SERVICE.

HONDA DOES NOT APPEAR TO HAVE A SOLUTION TO THIS PROBLEM. THE OIL AND FILTER CHANGES ARE A BANDAID, AND LONG TERM DAMAGE MAY BE OCCURRING TO OUR ENGINE. HONDA MAY HAVE A MAJOR PROBLEM ON ITS HANDS WITH THE 1.5 LITER ENGINE.


NHTSA ID Number: 11097913

Date of Incident: 12/01/2017

Consumer Location: LUXEMBURG, WI

Vehicle Identification No. (VIN): 7FARW2H5XJE...

SUMMARY:

THE ENGINE IS MAKING OIL AS WE DRIVE IT. THERE IS A GAS SMELL INSIDE THE CAR. WE DONT DRIVE SHORT DISTANCES WITH IT LIKE THE DEALER SAID WOULD MAKE IT HAPPEN

NHTSA ID Number: 11072826

Date of Incident: 12/19/2017

Consumer Location: HAYWARD, WI

Vehicle Identification No. (VIN): 2HKRW2H57HH...

SUMMARY:

GAS IN GETTING IN CRANKCASE OIL ON BRAND NEW ENGINE.
STARTED FROM DAY ONE. IT IS WASHING DOWN CYLINDER
WALLS,, DILUTING THE OIL AND CAUSING PREMATURE ENGINE
FAILURE. I AM SCARED TO DEATH IT WILL BLOW UP AT HIGHWAY
SPEEDS AND CAUSE MY DEATH.


NHTSA ID Number: 11076415

Incident Date January 6, 2018

Consumer Location SILVER BAY, MN

Vehicle Identification Number 2HKRW2H80HH****

Summary of Complaint

JANUARY 6TH, 2018 CAR SMELLED OF EGGS AND GAS. DROVE CAR
70 MILES THE EMMISIONS AND ENGINE LIGHT CAME ON AND CAR
WAS TOWED FROM A BUSY HWY 61 MN TO HONDA SERVICE
CENTER. THEY HAD CRV FOR 3 WEEKS. CHANGED OIL &
PROGRAMMED INJECTORS THE OIL HAD 1QUART OVER OF GAS
MIXED INTO THE OIL. 700 MILES LATER AND CAR NOW HAS GAS
MIXED INTO OIL AGAIN AND OVER THE ORANGE DIPSTICK AND
SMELLS OF VERY STRONG GAS. A SERVICE APPOINTMENT MADE
FOR MARCH 14TH, 2018 FOR OIL CHANGE, RATTLE IN THE DASH
BEHIND HEAD UNIT AND THE HEAT PROBLEM AS WELL. THE NO
HEAT FOR WINTER DRIVING WITH FROZEN WINDSHIELD BEFORE
DRIVING AND WHILE DRIVING IS VERY DANGEROUS! BREAKING
DOWN ON A INTERSTATE HWY IS ALSO DANGORUS WAITING 4
HOURS WITH NO HEAT IN CAR AT -1 TEMP WAITING FOR TOW IS
DANGORUS. NOT HAPPY ABOUT THIS AT ALL!

NHTSA ID Number: 11083547

Date of Incident: 01/08/2018

Consumer Location: MANHATTAN, KS

Vehicle Identification No. (VIN): 5J6RW2H84JL...

SUMMARY:

CAR HAS A GAS ODOR WHEN DRIVING, PARKED IN THE GARAGE AND IDLING. IT PERMEATES THE CABIN AND GARAGE. IT HAS BEEN THIS WAY SINCE PURCHASE, JUST ASSUMED IT WAS BURNING OFF SOMETHING, BUT WHEN IT CONTINUED, IT IS RIDICULOUS FOR A NEW CAR. GOING TO DEALER WITH COMPLAINT. CAUSES HEALTH CONCERNS DUE TO EXPOSURE OF FUMES ON CONSTANT BASIS

NHTSA ID Number: 11098079

Date of Incident: 01/10/2018

Consumer Location: MILLVILLE, NJ

Vehicle Identification No. (VIN): 2HKRW2H51HH...

SUMMARY:

I HAVE HAD THE BRAKES ENGAGE TWICE THROUGH THE COLLISION AVOIDANCE SYSTEM WITH NO OTHER VEHICLES AROUND ME.DANGEROUS AS I COULD BE REAR ENDED.AND THE OIL LEVEL RISES WITH FUEL DILUTION AND GAS FUMES ENTER THE PASSENGER COMPARTMENT.VEHICLE MISFIRED AND SHUTDOWN ON HIGHWAY DANGEROUS SITUATION AND BREATHING GAS FUMES.

NHTSA ID Number: 11081970

Date of Incident: 02/05/2018

Consumer Location: CINNAMINSON, NJ

Vehicle Identification No. (VIN): 2HKRW2H58HH...

SUMMARY:

THE 1.5 TURBO ENGINE'S ALL EXPERIENCE A COOLANT HEATING UP UNDER 32DEGREES F PROBLEM. AT IDLE THE TEMPERATURE COOLS DOWN AND HEATER DOES NOT SUPPLY WARM AIR. ALSO THE ENGINE OIL IS BEING DILUTED BY AN OVERLY RICH MIXTURE CAUSING UNBURNED GAS TO ENTER THE CRANKCASE DILUTING THE ENGINE OIL AND CAUSING ENGINE DAMAGE. DEALER HAS NO CLUE WHEN I TOOK IT IN TO WHY SO I HAVE TO CHANGE OIL EVE3RY 1000 MILES TO PROTECT THE ENGINE

NHTSA ID Number: 11072515

Date of Incident: 02/13/2018

Consumer Location: BURLINGTON, MA

Vehicle Identification No. (VIN): 5J6RM4H43GL...

SUMMARY:

FROM NEW, THE CABIN FILLS WITH NOXIOUS GAS FUMES. HONDA DEALERSHIP SAYS HONDA IS AWARE OF THE PROBLEM BUT WILL NOT DO ANYTHING TO FIX IT AS THEY ARE UNAWARE OF A FIX. UNACCEPTABLE FROM HONDA

NHTSA ID Number: 11097244

Incident Date February 14, 2018

Consumer Location BRIDGEWATER, VA

Vehicle Identification Number 2HKRW2H52HH****

Summary of Complaint

OIL/DILUTION ON DIP STICK. GAS SMELL ON DIP STICK. OVERFILLED DIP STICK.

Date of Incident: 02/20/2018

NHTSA ID Number: 11081944

Consumer Location: LOS ANGELES, CA

Vehicle Identification No. (VIN):

SUMMARY:

ENGINE OIL IS OVERFILLING AND BEING DILUTED WITH GAS. STRONG GAS SMELL. WHEN CHANGING OIL, MORE THAN WHAT WAS NEEDED TO FILL ENGINE OIL TO FULL


NHTSA ID Number: 11074202

Date of Incident: 02/21/2018

Consumer Location: WARNERS, NY

Vehicle Identification No. (VIN): 5J6RW2H82HL...

SUMMARY:

NOTICED GAS FUMES INSIDE THE VEHICLE SOON AFTER PURCHASE IN OCTOBER 2017. AT FIRST NOTICED IT AFTER I FUELED VEHICLE. THOUGHT MAYBE I HAD STEPPED IN PUDDLE OF GASOLINE AT THE PUMPS. AFTER A MONTH REALIZED THE GAS FUMES GOT WORSE IF I WAS IDLING MY VEHICLE, ESPECIALLY, IF I WAS PARKED FOR A HALF HOUR WITH CAR RUNNING(WINTER IN CENTRAL NEW YORK) WHILE I ATE MY LUNCH. I CAN SMELL IT OUTSIDE AROUND MY VEHICLE WHEN I PULL MY CAR INTO MY GARAGE AT HOME. TODAY I BROUGHT MY VEHICLE TO A HONDA DEALERSHIP FOR AN OIL CHANGE. I ASKED THEM TO LOOK AT MY VEHICLE FOR A FUEL LEAK SINCE THE FUMES ARE SO STRONG. I EVEN ASKED THEM TO IDLE THE CAR AND CHECK IT. THEY COULDN'T FIND ANYTHING IN THE HALF HOUR. THEY HAVE ASKED ME TO BRING IT BACK AND LEAVE IT FOR AWHILE NEXT TIME. I HAVE


NHTSA ID Number: 11078754

Incident Date February 22, 2018

Consumer Location ASHLAND, WI

Vehicle Identification Number 5J6RW2H8XHL****

Summary of Complaint

I PURCHASED A 2017 CRV FROM ASHLAND HONDA AND TOYOTA IN
ASHLAND, WI IN AUGUST 2017. ON FEBRUARY 23, 2018, MY CAR
WHICH HAS 5500 MILES ON IT, STARTED MAKING A HORRIBLE
NOISE AND BEGAN LOSING POWER WHILE ON THE HIGHWAY. THE
NOISE CONTINUED THROUGHOUT THE WEEKEND. WE MADE AN
APPOINTMENT WITH ASHLAND HONDA AND TOYOTA TO SERVICE
THE CALL.

HONDA CORPORATE AND THE SERVICE MANAGER (JERRY) AT
ASHLAND HONDA AND TOYOTA DETERMINED THROUGH VIDEO
CHATS AND CONFERENCE CALLS THAT THE CAMS WERE
DESTROYED IN MY ENGINE. THEY BELIEVE THIS HAD TO DO WITH
FUEL AND OIL MIXING AND GETTING INTO THE ENGINE. HONDA
REQUESTED THAT ASHLAND HONDA REPLACE THE HEAD OF THE
ENGINE. THEY HAVE NO FIX FOR THE PROBLEM WITH THE FUEL
AND OIL MIXING AND DESTROYING THE ENGINE. THE SERVICE
MANAGER SAID BECAUSE THE GOVERNMENT IS INVOLVED DUE
TO EMISSIONS, THIS ISSUE WILL BE CONTINUING, AND AT THIS
TIME THERE IS NO FIX. HE ALSO STATED THAT CORPORATE
INFORMED HIM THIS WAS A REGIONAL ISSUE DUE TO OUR
CLIMATE, AND THEY ARE CURRENTLY TRYING TO FIGURE OUT A
SOFTWARE FIX FOR THE PROBLEM. NO RESOLUTION AT THIS
POINT. CORPORATE FURTHER STATED THAT THEY ARE SEEING
THIS ISSUE WHEN THE TEMPERATURE IS BETWEEN 10 AND 30
DEGREES. I WAS OFFERED A 100,000 EXTENDED WARRANTY AND
RECOMMENDED THAT I GO TO THE DEALER EVERY 500 MILES TO
GET AN OIL CHANGE TO SEE IF FUEL IS MIXING WITH THE OIL.
SHOCKED AT THE LACK OF RESOLUTION, I ASKED THE SERVICE
MANAGER IF HONDA CORPORATE WAS COMFORTABLE GIVING ME
MY CAR BACK AFTER THE CAMS WERE REPLACED WITH NO
RESOLUTION, AND HE SAID YES.

I DO NOT BELIEVE THIS IS ETHICAL AT ALL FOR HONDA TO NOT
HAVE A FIX TO AN ENGINE PROBLEM THAT COULD ENDANGER
MYSELF AND/OR MY FAMILY. THE CAR ENGINE IS BEING
REPLACED WHEN PARTS ARE DELIVERED. AGAIN, NO RESOLUTION
TO THE PROBLEM WITH THE OIL AND GAS COMBINING AND
FIXING ISSUE.

NHTSA ID Number: 11079561

Incident Date March 8, 2018

Consumer Location ACTON, MA

Vehicle Identification Number 5J6RW2H58HL****

Summary of Complaint

I PURCHASED A 2017 HONDA CRV-EX WITH THE 1.5 TURBO ENGINE IN NOVEMBER 2017 AND PLAN TO GIVE THIS CAR TO MY NIECE AS A GRADUATION PRESENT IN 2019. I TOOK IT FOR ITS FIRST OIL CHANGE, AT 137 MILES, AND THE DEALER TOLD ME THAT THERE WAS GASOLINE IN THE OIL. AFTER THE OIL CHANGE, I RESEARCHED THE ISSUE AND DISCOVERED THAT MANY PEOPLE (2017 HONDA CRV OWNERS WITH THE 1.5 TURBO ENGINE) IN THE USA HAD THIS PROBLEM. THE DETAILS ARE LISTED IN THE HONDA FORUMS AND ON EDMUNDS. I ALSO SAW THAT HONDA WAS RECALLING 350K 2017-2018 CRVS WITH THE 1.5 TURBO ENGINE , IN CHINA, AS THE SOFTWARE NEEDED TO BE UPDATED. IT APPEARS THAT THE FUEL EJECTORS WERE SUPPLYING TOO MUCH GASOLINE AND THE RESIDUAL GASOLINE WAS LEAKING AROUND THE CYLINDERS INTO THE OIL. I REQUESTED HONDA-USA TO GET ACCESS TO THIS SOFTWARE UPDATE VIA MY LOCAL DEALER (BOCH HONDA WEST IN WESTFORD, MA). IT IS MY UNDERSTANDING THAT THE SOFTWARE UPDATE IS AVAILABLE. HONDA-USA SENT ME A RESPONSE INDICATING THAT THERE WAS NO RECALL ON MY VEHICLE AND I SHOULD GO BACK TO THE DEALER. I HAVE CALLED THE DEALER, AGAIN, BUT THEY CANNOT DO MUCH WITHOUT THE SOFTWARE UPDATE. I TOLD HONDA-USA THAT THIS PROBLEM IS VERY CONCERNING FOR THE FUTURE OF THE ENGINE REMINDED THEM THAT THEIR DEALER FOUND THE PROBLEM OF GASOLINE IN THE ENGINE AND THAT BOTH I AND THE DEALER WERE CONCERNED. MY CASE NUMBER WITH HONDA IS 07116734. SOME OF THE WEB SITES (LINKS) THAT FURTHER DEFINE THE PROBLEM ATE AS FOLLOW: 1) HTTPS://WWW.REUTERS.COM/ARTICLE/US-HONDA-CHINA-RECALL/HONDA-STOPS-SELLING-NEW-CR-VS-IN-CHINA-AFTER-RECALL-PLAN-REJECTED-IDUSKCN1GE1P8 2) HTTP://WWW.CRVOWNERSCLUB.COM/FORUMS/14-PROBLEMS-ISSUES/170193-POTENTIAL-MAJOR-ISSUE-2017-CR-V-GASOLINE-

GETS-INTO-ENGINE-OIL-TANK.HTML 3)
HTTPS://FORUMS.EDMUNDS.COM/DISCUSSION/50438/HONDA/CR-V/NEW-CR-V-COLD-WEATHER-RUNS-RICH-GAS-IN-OIL-MULTIPLE-COMPLAINTS

NHTSA ID Number: 11081991

Date of Incident: 03/08/2018

Consumer Location: HUNTLEY, IL

Vehicle Identification No. (VIN): 5J6RW2H80HL...

SUMMARY:

WE PURCHASED OUR HONDA CRV EX-L IN OCTOBER OF 2017, WITHIN 5 MONTHS WE NOTICED A STRONG GASOLINE SMALL IN OUR CABIN. ONE DAY I CHECKED THE OIL LEVEL BY PULLING THE DIPSTICK AND NOTICED THAT THE OIL LEVEL WAS 1 FULL INCH ABOVE THE FULL MARK. I ALSO NOTICED THAT THE OIL ON THE DIPSTICK REEKED OF GAS AND WAS VERY DARK AND WATERY. I IMMEDIATELY DID A GOOGLE SEARCH OF THIS ISSUE, KNOWING THAT OUR LAST OIL CHANGE WAS LESS THAN 3,000 MILES AGO FROM OUR LOCAL HONDA DEALER AND I WAS SHOCKED WITH THE RESULTS. THOUSANDS OF OWNERS WITH THE 2017-2018 CRV WITH THE 1.5 LITER TURBO ENGINE ARE HAVING THIS EXACT SAME ISSUE. THE ISSUE IS CALLED OIL DILUTION AND A LARGE AMOUNT OF GAS IS GETTING INTO THE OIL BUT THE REASONS ARE UNKNOWN. I IMMEDIATELY CALLED MY LOCAL DEALER AND HAD MY CAR IN THE NEXT DAY. THEY CLAIMED THEY HAVE NEVER SEEN ANYTHING LIKE THIS BEFORE AS MY OIL HAD SO MUCH GASOLINE IN IT THAT IT POURED OUT LIKE WATER. THEY SCHEDULED A CALL WITH HONDA ENGINEERS THE FOLLOWING MONDAY AND THEY WERE ADVISED TO CHANGE THE OIL AND DRIVE THE CAR AGAIN. THEY DID SO AND THE GAS VOLUME FILLED UP VERY QUICKLY IN THE NEW OIL SO THE NEXT STEP WAS TO REPLACE THE FUEL INJECTORS. BASED ON MY RESEARCH ONLINE MANY OTHER OWNERS HAVE HAD THE SAME PROCEDURE PERFORMED WHICH DIDN'T FIX THE ISSUE. HOWEVER THE INJECTORS WERE REPLACED ON MY CAR AND THE VEHICLE WAS GIVEN BACK TO ME, CLAIMED TO HAVE BEEN FULLY FIXED.

NEEDLESS TO SAY LESS THAN 2 WEEKS AFTER I GOT MY VEHICLE
BACK I CHECKED THE OIL LEVEL AND ONCE AGAIN IT'S WELL
ABOVE THE FULL MARK WITH A STRONG SMELL OF GASOLINE.
I'VE CALLED HONDA CORPORATE AND THEIR CUSTOMER SERVICE
JUST PLAIN SUCKS. LACK OF EMPATHY, LACK OF
ACKNOWLEDGEMENT OF THIS BEING A WIDESPREAD ISSUE AND
NO RESOLUTION OF CONCERNS. I'M CURRENTLY FIGHTING WITH
THEM, PLEADING TO GET A EXTENSION ON THE POWERTRAIN
WARRANTY AS THERE IS NO DOUBT THAT ENGINE DAMAGE HAS
ALREADY OCCURRED

NHTSA ID Number: 11080270

Incident Date March 17, 2018

Consumer Location LIVERPOOL, NY

Vehicle Identification Number 5J6RW2H58HL****

Summary of Complaint

GAS IS LEAKING INTO CRANKCASE AND DILUTING THE ENGINE
OIL THEREFORE RAISING THE OIL LEVEL ABOVE THE MAX FILL
LINE. ENGINE OIL HAS GAS ODOR AND OIL SEEMS THINNER DUE
TO DILUTION WITH GASOLINE.

NHTSA ID Number: 11080300

Incident Date March 16, 2018

Consumer Location RALEIGH, NC

Vehicle Identification Number 7FARW1H91HE****

Summary of Complaint

THE OIL LEVEL IN THE CRANK CASE CONTINUALLY RISES AND
SMELLS STRONGLY OF GASOLINE. WITHIN 5000 MILES, AND 40%
OIL LIFE ACCORDING TO THE MAINTENANCE MINDER, IT HAD
RISEN WELL ABOVE THE MAX LINE ON THE DIP STICK.

NHTSA ID Number: 11081407

Incident Date March 18, 2018

Consumer Location WILLIAMSPORT, PA

Vehicle Identification Number 2HKRW2H94HH****

Summary of Complaint

MY CAR IS A 2017 HONDA CRV TOURING WITH THE 1.5 LITER
TURBOCHARGED ENGINE AND 3200 MILES. ON 3/18/2018 I WAS
DRIVING AT 70MPH ON INTERSTATE 180 IN PENNSYLVANIA WHEN
THE CAR SUDDENLY SLOWED, LOST POWER, THE CHECK ENGINE
LIGHT CAME ON, AND MULTIPLE ELECTRICAL SYSTEMS
REPORTED MALFUNCTIONS IN THE DASH DISPLAY.

THE CAR WAS TOWED TO THE HONDA DEALER AND DIAGNOSED
WITH EXCESS GAS (APPROXIMATELY ONE QUART) IN THE OIL. THE
OIL AND FILTER WAS CHANGED AS A TEMPORARY SOLUTION,
AND A TECH LINE CASE (REF # 4089104) WAS OPENED WITH
HONDA. I WAS TOLD AT THIS TIME THERE IS NO PERMANENT
RECALL OR FIX. I WAS ADVISED THAT THIS IS A KNOWN PROBLEM
IN COLD CLIMATES WHERE THE CAR IS USED FOR SHORT DRIVES
AND DOES NOT WARM UP COMPLETELY. SINCE THEN I HAVE
LEARNED THAT ALL CRVS WITH THE 1.5 LITER TURBOCHARGED
ENGINE HAVE BEEN RECALLED IN CHINA FOR THE SAME
PROBLEM.

NHTSA ID Number: 11080313

Date of Incident: 03/19/2018

Consumer Location: HILLSBORO, OR

Vehicle Identification No. (VIN): 2HKRW2H57HH...

SUMMARY:

I CHECKED THE LEVEL OF THE OIL ON THE DIPSTICK AND THE
LEVEL SHOWS AS BEING HIGH, PAST THE 'FULL" REFERENCE
POINT WITH A FEW MILLIMETERS. ALSO, THE OIL HAS A STRONG
GAS ODOR. THE MILEAGE ON THE ENGINE IS 8454, AND THE FIRST
OIL CHANGE WAS PERFORMED AT 6547 MILES, 2 MONTHS AGO.

NHTSA ID Number: 11081939

Date of Incident: 03/28/2018

Consumer Location: NORWALK, CT

Vehicle Identification No. (VIN): 2HKRW2H80HH...

SUMMARY:

MY 2017 HONDA CR-V IT'S A NEW BROCHE WITH ONLY 3,800 MILES AND I'M VERY CONCERNED ABOUT THE OIL LEVEL RAISING DRASTICALLY, SO BAD THAT I HAD TO DO AN OIL CHANCE AT ONLY 3,000 MILES WHEN THE FIRST SERVICE WAS SUPPOSED TO BE DONE AT 5,000 MILES. IT'S BEEN 800 MILES SINCE THE OIL CHANGE AND THE OIL LEVEL IS WELL ABOVE THE SECOND MARK ON THE DIPSTICK WITH A STRONG GASOLINE ODOR, YES, FOR THE LITTLE EXPERIENCE I HAVE WITH VEHICLES I'M MORE THAN SURE THIS ENGINE IS MIXING UP GASOLINE WITH THE OIL, REASON WHY THE OIL LEVEL GOES UP AND LOOKS THINNER THAN NORMAL ALMOST LIKE WATER. MY CONCERN IS THAT IF THE OIL DELUDE DRASTICALLY THE ENGINE EVENTUALLY WILL FAIL FOR LACK OF LUBRICATION, AND THE WHOLE POWERTRAIN WILL BE DAMAGE! HONDA NEEDS TO FIND A SOLUTION TO THIS ISSUES ASAP OR RISK MANY CARS NEEDING A NEW ENGINE SOON! MANY PEOPLE IT'S HAVING THIS ISSUES WITH OIL DILUTION AND HEAT NOT WORKING PROPERLY PLUS AN STRONG GAS SMELL IN THE CABIN AND OIL COMPARTMENT!! I DRIVE MY CAR APPROXIMATELY 20 MILES A DAY MIXED DRIVING, HIGHWAY AND CITY!!

NHTSA ID Number: 11098691

Date of Incident: 04/06/2018

Consumer Location: PLAINVIEW, MN

Vehicle Identification No. (VIN): 5J6RW2H51HL...

SUMMARY:

DURING THE FIRST OIL CHANGE WE REMOVED OVER 5 QUARTS OF LIQUID. THE OWNERS MANUAL STATES THAT THE CAR HOLDS ONLY 3.7 QUARTS OF OIL. WE CONTACTED THE DEALERSHIP WE

BOUGHT IT FROM AND THEY INFORMED US THAT THIS IS A
KNOWN ISSUE FOR THE 2017 HONDA CR-V. GAS IS GETTING INTO
THE OIL. I AM NOW GETTING FREE OIL CHANGES, THEY STATED I
SHOULD COME IN FOR AN OIL CHANGE WHENEVER THE LIQUID
RISES ABOVE THE FILL LINE ON THE DIPSTICK. I HAVE MANAGED
TO GET AN OIL CHANGE EVERY 7010 DAYS SINCE APRIL 12, 2018.
THE LAST OIL CHANGE I HAD THERE WAS AT LEAST 1 QUART OF
GAS IN THE OIL DRAINED OUT OF THE RESERVOIR. THAT WAS 10
DAYS AFTER THE LAST OIL CHANGE. I HAVE CONTACTED HONDA
NUMEROUS TIMES AND THE ONE TIME I ACTUALLY TALKED TO
MY CASE MANAGER SHE TOLD ME THAT IT WAS NORMAL
OPERATION AND HONDA IS NOT CONSIDERING THIS AN ISSUE.
EVERYTHING I HAVE READ SO FAR STATES THAT EXCESS GAS IN
THE OIL IS AN ISSUE AND VERY BAD FOR THE ENGINE. I AM
CONCERNED THAT MOST CONSUMERS WHO PURCHASED A 2017
HONDA CR-V ARE NOT AWARE OF THIS ISSUE.


NHTSA ID Number: 11096603

Incident Date April 17, 2018

Consumer Location SUPERIOR, CO

Vehicle Identification Number 2HKRW2H89HH****

Summary of Complaint

I BOUGHT THIS 2017 CRV EXL-NAV AWD IN 05/2017. WE DID THE
FIRST MAINTENANCE ON MARCH 17 TO CHANCE OIL AT 8000
MILES. THERE IS OIL LEAKAGE, I WILL TALK THIS ON ANOTHER
COMPLAINT. I HEARD THAT THERE IS OIL EXCESSIVE PROBLEM ON
THIS 1.5T ENGINE, SO I CHECKED THE ENGINE OIL LEVEL AT
ABOUT 8800 MILES AND FOUND THAT THE OIL LEVEL IS MORE
THAN 10MM HIGHER THAN THE MAXIMUM MARK ON THE
LIPSTICK. I BROUGHT THE CAR TO DEALER AND THEY SAID IT IS
FINE. I AM VERY UPSET WITH THEIR ANSWER. I HAVE ATTACHED
THE PHOTO, THE OIL LEVEL IS EXCEEDING THE ORANGE PLASTIC
TO THE METAL PART. ACTUALLY CRV HAS BEEN STOPPED FOR
SALE IN CHINA FOR 2 MONTHS UNTIL HONDA INITIATE A RECALL
AND EXTEND THE WARRANTY TO 6 YEARS. RELIABILITY IS THE
MAIN REASON I BOUGHT HONDA, NOW I AM SO DISAPPOINTED.

WILL NOT CONSIDER ANY HONDA UNLESS THEY OFFER A
SATISFACTORY SOLUTION.

NHTSA ID Number: 11091024

Date of Incident: 04/30/2018

Consumer Location: NEWTOWN SQUARE, PA

Vehicle Identification No. (VIN): 2HKRW2H8XJH...

SUMMARY:

OIL ON DIPSTICK SMELLS LIKE GAS. THE CAR CABIN SMELLS LIKE
GAS AND IT BASICALLY STINKY UNLESS THE CAR WINDOWS ARE
OPEN. GARAGE ALSO SMELLS LIKE GAS WHEN CAR IS PARKED.

NHTSA ID Number: 11092009

Date of Incident: 05/01/2018

Consumer Location: SIMI VALLEY, CA

Vehicle Identification No. (VIN): 2HKRW1H57JH...

SUMMARY:

OIL DILUTION IN THE ENGINE! GAS FUMES SMELL IN THE CABIN
DUE TO IT!

NHTSA ID Number: 11092048

Incident Date May 2, 2018

Consumer Location NASHVILLE, TN

Vehicle Identification Number 2HKRW2H51HH****

Summary of Complaint

MY NEW 2017 HONDA CRV EX THAT ONLY HAS 6850 MILES DRIVEN
ON IT HAS A TERRIBLE DEFECT WITH OIL DILUTION ISSUES DUE

TO FUEL LEAKING INTO THE OIL PANS CAUSING OVERFLOW AND DILUTION TO THE OIL THAT IS SUPPOSED TO BE LUBRICATING THE ENGINE. THE OIL SMELLS VERY POTENT OF FUEL AND ALMOST 1 QUART OF EXTRA FLUID WAS DRAINED FROM THE OIL PAN WHEN TAKEN INTO THE DEALER AFTER REPORTING THE ISSUE. THE DEALER AGREED THAT THERE WAS A MAJOR ISSUE WITH FUEL DILUTING INTO THE OIL BUT WERE TOLD BY THE HONDA CORPORATE TECH LINE THAT THEY WERE TO JUST REPLACE THE OIL UNTIL A FIX COMES OUT. THE DEALER TECHNICIANS ASKED ABOUT CHANGING THE FUEL INJECTORS OR MAYBE A CYLINDER HEAD REPLACEMENT BUT WERE TOLD NOT TO DO ANYTHING. IT IS NOT SAFE TO RELEASE THESE CARS BACK TO THE OWNER KNOWING THERE IS AN DEFECT ISSUE THAT THEY DIDN'T EVEN REALLY ATTEMPT TO FIX THAT IS CAUSING INTERNAL ENGINE PARTS TO BREAK DOWN FASTER THAN NORMAL AND COULD CAUSE SERIOUS SAFETY CONCERNS DUE TO EVENTUAL BREAKDOWNS LEADING TO WRECKS. THE COMPANIES "FIX" IS TO GO IN FOR AN OIL CHANGE EVERY 500-1000 MILES EVEN THOUGH EXCESSIVE FUEL IS STILL MIXING WITH THE OIL. HONDA HAS REPORTED THAT THIS IS HAPPENING IN COLDER CLIMATES, BUT I AM STILL HAVING MAJOR ISSUES WITH THIS IN TENNESSEE WEATHER.

NHTSA ID Number: 11090588

Incident Date May 4, 2018

Consumer Location DULUTH, MN

Vehicle Identification Number 5J6RW2H89HL****

Summary of Complaint

2017 HONDA CRV. CONSUMER WRITES IN REGARDS TO DAMAGE TO THE ENGINE. *LD

THE CONSUMER WAS ADVISED THAT GASOLINE WAS MIXING WITH ENGINE OIL. *JS

NHTSA ID Number: 11092132

Incident Date May 5, 2018

Consumer Location ROSEMOUNT, MN

Vehicle Identification Number N/A

Summary of Complaint

SOMETIMES SMELL OF GAS IN THE PASSENGER COMPARTMENT. OIL LEVEL HAS INCREASED AND SMELLS LIKE GAS


NHTSA ID Number: 11093050

Incident Date May 9, 2018

Consumer Location KENMORE, NY

Vehicle Identification Number 5J6RW2H84HL****

Summary of Complaint

2017 HONDA CRV. CONSUMER WRITES IN REGARDS TO OIL DILUTION AND GAS FUME PROBLEM. *LD


NHTSA ID Number: 11097090

Date of Incident: 05/09/2018

Consumer Location: BEAVERTON, OR

Vehicle Identification No. (VIN): 2HKRW2H81JH...

SUMMARY:

VERY STRONG SMELL OF GASOLINE INSIDE THE CAR AND STANDING BESIDE THE CAR ON THE DRIVERS SIDE AFTER REFUELING AT GAS STATION. I DID NOT SEE ANY SPILLED GAS OR ANY LEAKS. SMELL GOT WORSE INSIDE THE CAR ON THE 3 MILE DRIVE HOME AND WAS VERY STRONG WHEN I PULLED INTO THE GARAGE. I CHECKED AGAIN ABOUT AN HOUR LATER AND THE SMELL HAD DECREASED ABOUT 50%


NHTSA ID Number: 11096549

Date of Incident: 05/09/2018

Consumer Location: SAINT CLAIR SHORES, MI

Vehicle Identification No. (VIN): 7FARW2H5XJE...

SUMMARY:

AFTER DRIVING A SHORT DISTANCE ON A CITY STREET, I NOTICED A STRONG GAS SMELL IN THE CABIN. I HAVE SINCE READ ON SOCIAL MEDIA AND WEBSITES WHERE OTHER CR-V OWNERS HAVE EXPERIENCED THE SAME PROBLEM AND THERE IS AN OIL DILUTION PROBLEM. EVERY TIME I CHECK THE OIL LEVEL, I CAN SMELL GAS ON THE DIPSTICK. I AM AWARE HONDA HAS ISSUED A RECALL IN CHINA FOR THIS SAME ISSUE. THEY NEED TO FIX THE PROBLEM IN THE U.S. AS WELL AND DO IT IMMEDIATELY.


NHTSA ID Number: 11096702

Incident Date May 16, 2018

Consumer Location FAIRVIEW, PA

Vehicle Identification Number 5FNYF4H59FB****

Summary of Complaint

GAS SMELL IN CABIN OF CAR ON AND OFF FOR 3 MONTHS. TOOK CAR TO DEALER FOR CHECK. SERVICE REPORTED GAS IN OIL. HONDA AWARE OF PROBLEM . OIL CHANGE DONE AS PER HONDA RECOMMENDATION. NO SOLUTION TO GAS CONTAMINATING OIL IS CURRENTLY AVAILABLE. GAS SMELL WAS PRESENT SOMETIMES WHILE RUNNING OTHER TIMES PRESENT ON ENTERING PARKED CAR.


NHTSA ID Number: 11098362

Incident Date May 21, 2018

Consumer Location VACAVILLE, CA

Vehicle Identification Number 5J6RW1H88HL****

Summary of Complaint

I HEARD THAT THERE IS OIL LEVEL INCREASE PROBLEM ON THIS MAKE, MODEL, AND YEAR'S ENGINE BECAUSE OF FUEL LEAK, SO I CHECKED THE ENGINE OIL LEVEL A FEW HUNDRED MILES AFTER CHANGING THE OIL AND FOUND THAT THE OIL LEVEL IS MUCH HIGHER THAN THE MAXIMUM MARK ON THE DIPSTICK. I BROUGHT THE CAR TO DEALER PREVIOUSLY, COMPLAINING OF A SMELL OF GAS IN THE OIL WHEN I CHECKED IT INITIALLY, AND THEY SAID IT IS FINE, THAT NOTHING IS WRONG. BOTH TIMES OF CHECKING THE OIL, THE CAR WAS IN MY GARAGE, STATIONARY, ON LEVEL GROUND.

NHTSA ID Number: 11098343

Incident Date May 26, 2018

Consumer Location SEATTLE, WA

Vehicle Identification Number 5J6RW2H97HL****

Summary of Complaint

THERE IS CERTAINLY AN EXCESS AMOUNT OF GAS MIXED IN ENGINE OIL. ONLY FEW WEEKS AFTER OIL CHANGE, THE OIL LEVEL IS ALREADY 20 MM ABOVE THE MAX LINE. IT'S CERTAINLY A DESIGN FLAW AND I THINK HONDA SHOULD BE RESPONSIBLE FOR THIS MISTAKE AND THE CUSTOMERS. IT'S HUGE SAFETY CONCERN AND HOPE THE RELEVANT RESOURCES CAN TAKE ACTION TO INVESTIGATE THIS ISSUE.

NHTSA ID Number: 11098520

Date of Incident: 05/29/2018

Consumer Location: CAMDEN, AR

Vehicle Identification No. (VIN): 5J6RM3H3XGL...

SUMMARY:

OIL ISSUE..THERE SEEMS TO BE A RECALL ON HONDA VEHICLES IN CHINA DUE TO GASOLINE FLOWING INTO THE OIL..MY SON WAS CHECKING THE OIL AND IT SMELLS LIKE GAS...I HOPE THIS DOES NOT CASE A FIRE HAZARD AS MY OIL NOW HAS BECOME

GASOLINE. YET NO RECALL IN AMERICA WHY?

91.     Additionally, the following are some examples of the many

complaints submitted to ODI by Honda Civic owners.

NHTSA ID Number: 11090346

Date of Incident: 02/13/2018

Consumer Location: JACKSONVILLE, FL

Vehicle Identification No. (VIN): 19XFC1F30HE...

SUMMARY:

2016 NEW HONDA CIVIC 2.0 ENGINE OIL LEAKING ! ! ! 2017 NEW
HONDA CIVIC 1.5T ENGINE OIL INCREASED13 MM THE SAME
STATION 2017. NEW HONDA CIVIC WIPERS BROKEN , REVERSING
RADAR BROKEN INCREASED OIL 13MM IS NOT A MALFUNCTION!
ENGINE OIL INCREASED, REPAIRED TWICE, NOT REPAIRED, HONDA
SAID NO WAY


NHTSA ID Number: 11083635

Date of Incident: 04/06/2018

Consumer Location: SCHWENKSVILLE, PA

Vehicle Identification No. (VIN): 19XFC1F98HE...

SUMMARY:

I HAVE A 2017 HONDA CIVIC WITH THE 1.5 LITER TURBO. I
STARTED SEEING LOTS OF INFORMATION ON THE CIVIC FORUM
ABOUT OIL DILUTION SO I DECIDED TO HAVE MY ENGINE OIL
ANALYZED. THE REPORT CAME BACK SAYING THAT THE AMOUNT
OF FUEL IN MY OIL WAS GREATER THAN 5% WHICH WAS DEEMED
CRITICAL . THIS CONDITION WILL CAUSE ENGINE FAILURE AND
POSSIBLE UNSAFE CONDITIONS.

## CLASS ACTION ALLEGATIONS

92.     Plaintiffs bring this action on behalf of themselves, and on behalf of

the following nationwide class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or

23(b)(3). Specifically, the nationwide class consists of the following:

**Nationwide Class:**
All persons or entities in United States who are current or former owners
and/or lessees of a Class Vehicle (the "Nationwide Class").

93.     In the alternative to the Nationwide Class, and pursuant to FED. R.

CIV. P. 23(c)(5), Plaintiffs seek to represent the following state classes only in the

event that the Court declines to certify the Nationwide Class above:

**Minnesota Class:**
All persons or entities in Minnesota who are current or former owners and/or
lessees of a Class Vehicle (the "Minnesota Class").

**Florida Class:**
All persons or entities in Florida who are current or former owners and/or
lessees of a Class Vehicle (the "Florida Class").

**California Class:**
All persons or entities in California who are current or former owners and/or
lessees of a Class Vehicle (the "California Class").

94.     Together, the Minnesota Class, Florida Class and California Class

shall be collectively referred to herein as the "State Sub-Classes."  Excluded from

the Classes are Defendants, their affiliates, employees, officers and directors,

persons or entities that purchased the Class Vehicles for resale, and the Judge(s)

assigned to this case.  Plaintiffs reserve the right to modify, change or expand the

Class definitions.

95.    <u>Numerosity</u>: Upon information and belief, the Classes are so

numerous that joinder of all members is impracticable. While the exact number and

identities of individual members of the Classes are unknown at this time, such

information being in the sole possession of Defendants and obtainable by Plaintiffs

only through the discovery process, Plaintiffs believe that thousands of Class

Vehicles have been sold and leased in each of the states that are the subject of the

Classes.

96.    <u>Existence and Predominance of Common Questions of Fact and Law</u>:

Common questions of law and fact exist as to all members of the Classes. These

questions predominate over the questions affecting individual Class members.

These common legal and factual questions include, but are not limited to:

   a.   whether the engines in the Class Vehicles are predisposed to

        premature failure;

   b.   whether the engines in the Class Vehicles contain a manufacturing or

        other defect;

   c.   whether the defective PCV system is common to all or some of the

        Class Vehicles;

   d.   if so, whether the Engine Defect causes engines to fail in the Class

        Vehicles;

e.  whether Defendants knowingly failed to disclose the existence and
    cause of the Engine Defect in Class Vehicles;

f.  whether Defendants' conduct violates the Minnesota Prevention of
    Consumer Fraud Act;

g.  whether, as a result of Defendants' omissions and/or
    misrepresentations of material facts related to the Engine Defect,
    Plaintiffs and members of the Class have suffered ascertainable loss of
    monies and/or property and/or value;

h.  whether, as a result of Defendants' omissions and/or
    misrepresentations of material facts related to the Engine Defect,
    Plaintiffs and members of the Class have suffered an increased cost of
    maintenance related to the Class Vehicles; and

i.  whether Plaintiffs and Class members are entitled to monetary
    damages and/or other remedies and, if so, the nature of any such
    relief.

97.  <u>Typicality</u>: All of the Plaintiffs' claims are typical of the claims of the

Classes since Plaintiffs purchased Class Vehicles with Engine Defects and

defective vehicle designs, as did each member of the Class. Furthermore, Plaintiffs

and all members of the Classes sustained monetary and economic injuries

including, but not limited to, ascertainable loss arising out of Defendants' wrongful

conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

98.   <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Classes that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

99.   <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Classes to individually and effectively redress the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of

single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

100.   <u>Injunctive Relief</u>: Pursuant to Fed. R. Civ. P. 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

<u>**VIOLATIONS ALLEGED**</u>

<u>**COUNT I**</u>
**VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68-70)**
**(On Behalf of the Minnesota Class)**

101.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

102.   Plaintiffs and members of the Classes are each "persons" as defined by the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), MINN. STAT. § 325F.68(2). The Class Vehicles sold or leased to Plaintiffs and the Classes are "Merchandise" as defined by MINN. STAT. § 325F.68(2).

103.   The MPCFA makes unlawful "[t]he act, use, or employment by any

person of any fraud, false pretense, false promise, misrepresentation, misleading

statement or deceptive practice, with the intent that others rely thereon in

connection with the sale of any merchandise, whether or not any person has in fact

been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1). The

MPCFA further provides that "any person injured by a violation of [the MPCFA]

may bring a civil action and recover damages, together with costs and

disbursements, including costs of investigation and reasonable attorney's fees, and

receive other equitable relief as determined by the court." MINN. STAT. § 8.31(3a).

104.    Defendants engaged in unlawful conduct in violation of the MPCFA

by making knowing and intentional omissions. Defendants knowingly failed to

disclose the manufacturing and/or material Engine Defect in the Class Vehicles in

order to secure the sale of the Vehicles, and to offer them at a premium price.

105.    Furthermore, when the engines in the Class Vehicles fail to function

properly and require repair due to the Engine Defect, Defendants also do not reveal

to Class members that such premature engine failure is the result of a

manufacturing and/or material defect actually caused by Defendants. Instead, Class

members are forced to pay out of pocket for repairs necessitated by Defendants'

defective product.

106.    Defendants did not fully and truthfully disclose to its customers the

true nature of the inherent defect in the engines, which was not readily

discoverable until after the Vehicles were purchased. As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said Engine Defect and all of the resultant problems. These facts that Defendants concealed were solely within their possession.

107.   Defendants intended that Plaintiffs and all Class members rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles.

108.   Defendants' conduct caused Plaintiffs and Class members to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiffs and Class members have suffered an ascertainable loss by receiving less than what was promised.

109.   A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiffs and the Classes. Had the Engine Defect in the Class Vehicles been disclosed, consumers would not have purchased them or would have paid less for the Class Vehicles had they decided to purchase them.

110.   Plaintiffs and the Classes sustained damages as a result of Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the MPCFA.

## COUNT II
## VIOLATION OF THE FLORIDA
## DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (On Behalf of the Florida Class)

111.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

112.   The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202 (2).

113.   Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members the fact that the Class Vehicles suffer from a manufacturing and design defect (and the costs, risks, and diminished value of the Vehicles as a result of this problem), which was not readily discoverable until after purchase.  Defendant should have disclosed this information because they were in a superior position to know the true facts related to this defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to this defect until after manifestation of the defect.

114.   These unfair methods of competition and unfair and deceptive acts

have caused injuries to Plaintiffs and members of the Classes.

## COUNT III
## BREACH OF THE IMPLIED
## WARRANTY OF MERCHANTABILITY
### (On Behalf of the California Class, Pursuant to the
### Song-Beverly Act California Civil Code Section 1791.1)

115.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

116.   Plaintiffs bring this cause of action against Defendants on behalf of themselves and on behalf of the members of the California Class.

117.   Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

118.   Defendants provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their engines suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

119.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among

other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use while the Class Vehicles were being operated.

120.   Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe transportation.   Instead, the Class Vehicles are defective, including but not limited to the defective design and manufacture of their engines.

121.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**COUNT IV**
**Violation of California's Consumer Legal Remedies Act,**
**California Civil Code section 1750 *et seq*.**
**(On Behalf of the California Class)**

122.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

123.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the California Class.

124.   Defendants are "persons" as defined by California Civil Code §

1761(c).

125.   Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

126.   By failing to disclose and concealing the defective nature of the Class Vehicles' engines from Plaintiffs and prospective Class Members, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles and their engines had characteristics and benefits that they do not have, and represented that the Class Vehicles and their engines were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

127.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

128.   Defendants knew that the Class Vehicles and their engines suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

129.   Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the engines and/or the associated repair costs because:

a. Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' engines;

b. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their engines had a dangerous safety defect until the Engine Defect manifested; and

c. Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the Engine Defect.

130. In failing to disclose the defective nature of the engines, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

131. The facts concealed or not disclosed by Defendants to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles or pay a lesser price. Had Plaintiffs and other Class Members known that the Class Vehicles' engines were defective, they would not have purchased the Class Vehicles or would have paid less for them.

132. Plaintiffs and the Class Members are reasonable consumers who do not expect the engines installed in their vehicles to fail prematurely. This is the reasonable and objective consumer expectation relating to the Class Vehicles.

133. As a result of Defendants' conduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles have experienced and will continue to experience premature engine failures.

134.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

135.   Plaintiffs and the Class are entitled to equitable relief.

136.   Plaintiff Bautista on behalf of himself and all prospective Class Vehicle owners provided Defendants with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a).  If Defendants fail to provide appropriate relief for their violations of the CLRA, Plaintiffs intend to amend this Complaint to seek monetary, compensatory, and punitive damages from Defendants in addition to the injunctive and equitable relief that is currently sought.

## COUNT V
**Violation of California Business & Professions Code § 17200, *et seq.***
**(On Behalf of the California Class)**

137.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

138.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the California Class.

139.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

140.   Plaintiffs and the Class Members are reasonable consumers who do

not expect their engines to prematurely fail.

141.   Defendants knew the Class Vehicles and their engines suffered from inherent defects, were defectively manufactured, would fail prematurely, and were not suitable for their intended use.

142.   In failing to disclose the Engine Defect, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

143.   Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles and their engines:

    d.   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' engines;

    e.   Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their engines; and

    f.   Defendants actively concealed the defective nature of the Class Vehicles and their engines from Plaintiffs and the Class.

144.   The facts concealed or not disclosed by Defendants to Plaintiffs and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase Class Vehicles. Had Plaintiffs and other Class Members known that the Class Vehicles' engines were defective and posed a safety hazard, then Plaintiffs and the other Class Members would not have purchased Class Vehicles, or would have paid less for them.

145.   Defendants continued to conceal the defective nature of the Class

Vehicles and their engines even after Class Members began to report problems.

Indeed, Defendants continue to cover up and conceal the true nature of the

problem.

146.   By their conduct, Defendants have engaged in unfair competition

and unlawful, unfair, and fraudulent business practices.

147.   Defendants' unfair or deceptive acts or practices occurred repeatedly

in Defendant's trade or business, and were capable of deceiving a substantial

portion of the purchasing public.

148.   As a direct and proximate result of Defendants' unfair and deceptive

practices, Plaintiffs and the Class have suffered and will continue to suffer actual

damages.

149.   Defendants have been unjustly enriched and should be required to

make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the

Business & Professions Code.

<u>**COUNT VI**</u>
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class and State Sub-Classes)**

150.   Plaintiffs and the Classes incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

151.   Defendants expressly warranted that the Class Vehicles were of high

quality and, at a minimum, would actually work properly. Defendants also

expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty, Powertrain Limited Warranty and certified pre-owned ("CPO") warranty periods.

152.   Defendants breached these warranties by selling to Plaintiffs and Class members the Class Vehicles with known engine problems, which are not of high quality, and which fail prematurely and/or fail to function properly.

153.   As a result of the Defendants' actions, Plaintiffs and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

154.   Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold a defective product without informing consumers about the manufacturing and/or material defect.  Furthermore, Defendants continue to charge Class members for repairing the defective engines – if they repair them at all -- when in fact such repairs are actually necessitated because of Defendants' defective product.

155.   The time limits contained in Defendants' warranty periods were also

unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Honda and Class members, and Honda knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

156.    Plaintiffs and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## COUNT VII
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the Nationwide Class and State Sub-Classes)

157.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

158.    A warranty that the Class Vehicles were in merchantable condition is implied by law.

159.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Class Vehicles are inherently defective in that there are defects in the Class Vehicles' engines, which are not of high quality, and which fail prematurely and/or fail to function properly.

160.   Defendants were provided notice of these issues by numerous informal and formal complaints filed against them, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

161.   As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

### COUNT VIII
### COMMON LAW FRAUD
### (On Behalf of the Nationwide Class and State Sub-Classes)

162.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

163.   Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the Class Vehicles' engines, which was not readily discoverable until after the Vehicles were purchased. As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said Engine Defect and all of the resultant problems.

164.   These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and Class members rely upon them.

165.   Plaintiffs and Class members reasonably relied on these omissions, and suffered damages as a result.

## COUNT IX
## BREACH OF THE DUTY OF GOOD FAITH
## AND FAIR DEALING
### (On Behalf of the Minnesota and California Sub-Classes)

166.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

167.   Every contract in Minnesota and California contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

168.   Defendants breached the covenant of good faith and fair dealing through malicious conduct by, *inter alia*, failing to notify Plaintiffs and Class members of the Engine Defect in the Class Vehicles, and failing to fully and properly repair this defect.

169.   Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## COUNT X
## UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class and State Sub-Classes)

170.   Plaintiffs and the Class incorporate the foregoing allegations. This

count is pled in the alternative to the contract-based claims.

171.    Plaintiffs and members of the Class conferred a benefit on Defendants.

172.    Defendants had knowledge that this benefit was conferred upon them.

173.    Defendants have been and continue to be unjustly enriched at the expense of Plaintiffs, and their retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully requests that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Classes as defined above;

B.    appoint Plaintiffs as the representative of the Classes and their counsel as Class counsel;

C.    award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.    award pre-judgment and post-judgment interest on such monetary relief;

E.     grant appropriate injunctive and/or declaratory relief, including,

without limitation, an order that requires Defendants to repair, recall,

and/or replace the Class Vehicles and to extend the applicable

warranties to a reasonable period of time, or, at a minimum, to

provide Plaintiffs and Class members with appropriate curative notice

regarding the existence and cause of the design defect;

F.     award reasonable attorney's fees and costs; and

G.     grant such further relief that this Court deems appropriate.


Dated: June 5, 2018

Respectfully submitted,


**GUSTAFSON GLUEK PLLC**


By:    s/ *Daniel C. Hedlund*
Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Catherine K. Smith (#353723)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
csmith@gustafsongluek.com

Matthew D. Schelkopf
Joseph G. Sauder
Joseph B. Kenney
**SAUDER SCHELKOPF**
555 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: (610) 421-1326
mds@sstriallawyers.com
jgs@sstriallawyers.com
jbk@sstriallawyers.com


Matthew R. Mendelsohn
David A. Mazie
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 228-9898
Fax: (973) 228-0303
mrm@mazieslater.com
dmazie@mazieslater.com

*Counsel for Plaintiffs*