## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TROY FATH, VINCENT PUMA, HIGINIO BAUTISTA and CHRISTOPHER HAMILTON, individually and on behalf of others similarly situated,<br><br>            Plaintiffs,<br><br>    vs.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>                 Defendant. | Civ. No.: 18-cv-01549-NEB-LIB<br><br>CLASS ACTION<br><br><br>**FIRST CONSOLIDATED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs Troy Fath, Vincent Puma, Higinio Bautista and Christopher Hamilton bring this action against Defendant American Honda Motor Co., Inc.[1] ("Defendant" or "Honda"), by and through their attorneys, individually and behalf of all others similarly situated, and allege as follows:

## INTRODUCTION

1.    This is a class action lawsuit brought by Plaintiffs on behalf of

---

[1] On August 10, 2018, American Honda Motor Co., Inc. and Plaintiffs entered into an agreement whereby American Honda would be the only Honda entity that needs to appear and respond to the complaint in exchange for American Honda's agreement to supply certain documents, information, and/or witnesses from other Honda entities and to pay any final judgment, if any, against other previously-named Honda entities, after all appeals. Further details surrounding this agreement are memorialized in a letter between the parties.  As a result of this agreement, allegations previously made against Honda Motor Co, Ltd. and Honda North America, Inc., have been imputed to American Honda in this Complaint.

themselves and a class of current and former Honda vehicle owners and lessees of model years ("MY") 2015-18 Honda CR-V and 2016-18 Honda Civic vehicles equipped with "Earth Dreams" 1.5L, 2.0L and 2.4L direct injection engines (the "Class Vehicles" or "Vehicles").[2]

2.     This action arises from Honda's failure, despite its longstanding knowledge of this material and manufacturing defect, to disclose to Plaintiffs and other consumers that the Class Vehicles are predisposed to an engine defect that causes fuel dilution of the engine oil resulting in decreased oil viscosity, premature wear and ultimate failure of the engines, engine bearings and other internal engine components and an increased cost of maintenance (the "Engine Defect"). Such premature failures can also result in stalling events and other dangerous situations for Class Vehicle occupants and others on the road.

3.     Significantly, and as a result of the Engine Defect, the engine oil within the Class Vehicles will be caused to lose its original viscosity, meaning the lubricating properties of the oil diminish and become less capable of withstanding the higher loads of an internal combustion engine.  This can result in contact between metal surfaces within the engine, leading to rapid wear of internal bearings, the rotating assembly and other internal parts that rely on lubrication to function

---

[2] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

correctly.

4.      Not only did Honda actively conceal the fact that the Class Vehicles' engines were not assembled and manufactured correctly (and require costly repairs to fix), it did not reveal that the existence of this defect would diminish the intrinsic and resale value of the Class Vehicles.

5.      Honda has long been aware of the Engine Defect. Despite its longstanding knowledge of this defect, Honda has been unable to adequately repair the Class Vehicles when the defect manifests.

6.      Many owners and lessees of Class Vehicles have communicated with Defendant and its agents to request that Honda remedy and/or address the Engine Defect and/or resultant damage at no expense. Defendant has failed and/or refused to do so – often conveying to Vehicle owners and lessees that Class Vehicles are operating as intended and therefore cannot be repaired under warranty or otherwise.

7.      For customers whose Vehicles are within the Power Train Warranty period (which extends for the shorter of five years or 60,000 miles), Honda has done nothing to address or correct the Engine Defect when it manifests in the Class Vehicles.  Instead, Honda has blamed Class members for not driving the Class vehicles for longer distances.

8.      Despite notice and knowledge of the Engine Defect from the

numerous consumer complaints it has received, information received from Honda

dealerships, pre-sale durability testing, National Highway Traffic Safety

Administration ("NHTSA") complaints, and its own internal records, Honda has

not recalled the Class Vehicles to repair the Engine Defect, offered its customers a

suitable repair or replacement free of charge, or offered to reimburse its customers

who have incurred out of pocket expenses to repair the Engine Defect.

9.     As a result of Honda's unfair, deceptive and/or fraudulent business

practices, owners and/or lessees of Class Vehicles, including Plaintiffs, have

suffered an ascertainable loss of money and/or property and/or loss in value. The

unfair and deceptive trade practices committed by Honda were conducted in a

manner giving rise to substantial aggravating circumstances.

10.     Had Plaintiffs and other Class members known about the Engine

Defect at the time of purchase or lease, they would not have purchased or leased

the Class Vehicles, or would have paid substantially less for the Class Vehicles.

11.     As a result of the Engine Defect and the considerable monetary costs

associated with attempting to repair such a defect, Plaintiffs and Class members

have suffered injury in fact, incurred damages and have otherwise been harmed by

Honda's conduct.

12.     Accordingly, Plaintiffs bring this action to redress Honda's violations

of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Florida

Deceptive and Unfair Trade Practices Act ("FDUTPA"), California's Consumer Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), Georgia's Fair Business Practices Act ("GFBPA") and also to seek recovery for Defendant's breach of express warranty, breach of implied warranty, common law fraud, breach of the covenant of good faith and fair dealing and, alternatively, unjust enrichment.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Honda transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, Honda has advertised in this district and has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in

part, within this district.

15.     This Court has personal jurisdiction over Honda because it has conducted substantial business in this judicial district and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of Minnesota and throughout the United States.

## THE PARTIES

**Plaintiff Troy Fath**

16.     Plaintiff Troy Fath is a citizen of the State of Minnesota and resides in Hermantown, Minnesota.

17.     In or around July 2017, Plaintiff Fath purchased a new 2017 Honda CR-V with a 1.5-liter Earth Dreams engine from Luther St. Cloud Honda, an authorized Honda dealer and repair center located in Waite Park, Minnesota.

18.     Plaintiff Fath purchased (and still owns) this vehicle, which is used for personal, family and/or household uses. His vehicle bears Vehicle Identification Number: 5J6RW2H83HL049967.

19.     On or about January 10, 2018, with approximately 5,200 miles on the odometer, Plaintiff Fath's wife was traveling in the vehicle with their young daughter. Suddenly, and without warning, the vehicle went into limp mode and the warning lights on the dashboard illuminated. Plaintiff's wife immediately pulled over and contacted Plaintiff Fath.  As a result, Plaintiff Fath towed the vehicle to Krenzen Honda, an authorized Honda dealer and repair center located in Duluth,

Minnesota for diagnosis and repair.  The service advisor showed Plaintiff Fath that the engine oil level in the vehicle was excessively high.  After having the vehicle for approximately two weeks, Krenzen Honda replaced the engine oil and filter.

20.     In or around February 2018, with approximately 6,800 miles on the odometer, Plaintiff Fath noticed a smell of gasoline emanating from his vehicle. As a result, on or about February 20, 2018, he again presented his vehicle to Krenzen Honda for diagnosis and repair.  Krenzen Honda diagnosed the cause as "GAS SMELL" and changed the engine oil and filter at no charge.

21.     In or around April 2018, with approximately 7,600 miles on the odometer, Plaintiff Fath noticed the engine oil in his vehicle was over the full mark.  As a result, on or about April 10, 2018, he again presented his vehicle to Krenzen Honda.  Krenzen Honda diagnosed the cause as "OIL OVER FULL" and changed the engine oil and filter at no charge.  The technician also included the following comments on the service invoice: "CHANGED OIL AND FILTER. OIL WAS ABOUT 1QT OVER FULL. HONDA IS IN THE PROCESS OF CREATING A SOLUTION."

22.     In or around May 2018, with approximately 8,900 miles on the odometer, Plaintiff Fath noticed the engine oil in his vehicle was contaminated with fuel.  As a result, on or about May 25, 2018, he again presented his vehicle to Krenzen Honda.  Krenzen Honda diagnosed the cause as "FUEL IN OIL" and

changed the engine oil and filter at no charge.  The technician also included the

following comments on the service invoice: "lof oil and filter change completed oil

was 9mm over full."

23.    Plaintiff Fath has previously contacted Defendant regarding the oil

dilution in his vehicle.  Defendant has acknowledged that a problem exists but

there is currently no fix for the issue.

24.    Plaintiff Fath has suffered an ascertainable loss as a result of

Defendant's omissions and/or misrepresentations associated with the Engine

Defect, including, but not limited to, out of pocket loss associated with the Engine

Defect and future attempted repairs and diminished value of his vehicle.

25.    Neither Defendant, nor its agents, dealers or other representatives

informed Plaintiff Fath of the existence of the Engine Defect prior to purchase.

**Plaintiff Vincent Puma**

26.    Plaintiff Vincent Puma is a citizen of the State of Florida and resides

in St. Augustine, Florida.

27.    In or around November 2015, Plaintiff Puma purchased a new 2016

Honda CR-V with a 2.4-liter Earth Dreams engine from Coggin Honda of St.

Augustine ("Coggin Honda"), an authorized Honda dealer and repair center located

in St. Augustine, Florida.

28.    Plaintiff Puma purchased (and still owns) this vehicle, which is used

for personal, family and/or household uses. His vehicle bears Vehicle Identification Number: 2HKRM3H39GH504975.

29.     On or about October 31, 2016, with approximately 2,900 miles on the odometer, Plaintiff Puma smelled gasoline in the engine's oil and noticed an increase in fluid level on the vehicle's oil dipstick. As a result, Plaintiff Puma presented his vehicle to Coggin Honda for diagnosis and repair. The service advisor showed Plaintiff Puma that the gasoline smell in the vehicle's engine oil was similar to other new CR-V vehicles located at the dealership. The dealership then replaced the engine oil and filter at a charge of $49.95 to Plaintiff Puma. Coggin Honda did not address or document the increased fluid level regarding the vehicle's engine oil.

30.     On or about September 22, 2017, with approximately 4,760 miles on the odometer, Plaintiff Puma again smelled gasoline in the engine's oil and noticed an increase in fluid level on the vehicle's oil dipstick. As a result, Plaintiff Puma presented his vehicle to Coggin Honda for diagnosis and repair. On this occasion, and per the notes contained on the service invoice, the Coggin Honda technician noted: "OIL SMELLS NORMAL TO ME AT THIS TIME."  Coggin Honda, however, did not provide an explanation for the increase in fluid level related to the vehicle's engine oil.  The dealership then replaced the engine oil and filter at a charge of approximately $31.12 to Plaintiff Puma. Coggin Honda did not address

or document the increased fluid level regarding the vehicle's engine oil.

31.    In or around April 2018, with approximately 6,300 miles on the odometer, Plaintiff Puma again noticed a smell of gasoline when checking the oil and also that the oil level had again increased.  As a result, Plaintiff Puma again presented his vehicle to Coggin Honda for diagnosis and repair.  On this occasion, and per the notes contained on the service invoice, Coggin Honda acknowledged that "REMNANT FUEL ODOR ON THESE VEHICLES ARE CREATED BY DIRECT INJECTION FUEL SYSTEM."  Coggin Honda; however, did not provide an explanation for the increase in fluid level related to the vehicle's engine oil.  As a result, Coggin Honda changed the engine oil and filter at no charge.  At this time, Coggin Honda also informed Plaintiff Puma that the narrow design of the vehicle's crankcase would show increased fluid levels.

32.    Plaintiff Puma has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Engine Defect, including, but not limited to, out of pocket loss associated with the Engine Defect and future attempted repairs and diminished value of his vehicle.

33.    Neither Defendant, nor its agents, dealers or other representatives informed Plaintiff Puma of the existence of the Engine Defect prior to purchase.

**Plaintiff Higinio Bautista**

34.    Plaintiff Higinio Bautista is a citizen of the State of California and

resides in Lake Forest, California.

35.    In or around July 2017, Plaintiff Bautista purchased a new 2016 Honda Civic with a 1.5-liter Earth Dreams engine from Norm Reeves Honda, ("Reeves Honda"), an authorized Honda dealer and repair center located in Lake Forest, California.

36.    Plaintiff Bautista purchased (and still owns) this vehicle, which is used for personal, family and/or household uses. His vehicle bears Vehicle Identification Number: 2HGFC1F94GH649417.

37.    On or about June 28, 2017, with approximately 13,500 miles on the odometer, Plaintiff Bautista was operating his vehicle when he suddenly heard a loud ticking noise from the engine compartment. The vehicle then stalled and the warning lights on the dash illuminated. Thereafter, Plaintiff Bautista's vehicle would not start or stay running.

38.    As a result, Plaintiff Bautista had his vehicle towed to Penske Honda, an authorized Honda dealer and repair center located in Ontario, California, for diagnosis and repair. Penske Honda concluded that the fuel within the fuel tank of the vehicle was contaminated and recommended Plaintiff Bautista pay to remove, clean and reinstall the gas tank, in addition to paying for a fuel system treatment service and replacement of the fuel injectors and high-pressure fuel pump. Plaintiff Bautista declined these services.  Thereafter, he paid Penske Honda a

$125.00 fee for diagnosis and had his vehicle towed to Reeves Honda.

39.     On or about August 11, 2017, Reeves Honda determined that the intake camshaft within the engine of Plaintiff's vehicle had broken. Reeves Honda, with assistance of Defendant's technical hotline, determined that plastic debris at the head gasket area of Plaintiff's vehicle had caused the camshaft failure. As a result, neither Defendant nor Reeves Honda was willing to offer warranty coverage for the engine repair. Plaintiff was forced to pay $2,087.00 to Reeves Honda for the repair of his vehicle related to the Engine Defect.

40.     Upon information and belief, the engine failure experienced by Plaintiff Bautista was a result of the Engine Defect alleged in the Class Vehicles.

41.     Plaintiff Bautista continues to notice a smell of gasoline when checking the oil as well as an increase in oil level within the vehicle.

42.     Plaintiff Bautista has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Engine Defect, including, but not limited to, out of pocket loss associated with the Engine Defect and future attempted repairs and diminished value of his vehicle.

43.     Neither Defendant, nor its agents, agents, dealers or other representatives informed Plaintiff Bautista of the existence of the Engine Defect

prior to purchase.

**Plaintiff Christopher Hamilton**

44.     Plaintiff Christopher Hamilton is a citizen of the State of Georgia.

45.     In or around June 2017, Plaintiff Hamilton purchased a new 2017 Honda Civic with a 1.5T engine from Curry Honda in Chamblee, Georgia. Plaintiff Hamilton's Civic came with the Engine Defect. Honda did not disclose this fact to Plaintiff Hamilton, who greatly values vehicle safety, cost, durability, performance, and quality.

46.     Plaintiff Hamilton uses his Civic for travel on roads near his residence in the Atlanta, Georgia metropolitan area.

47.     From the date of purchase to the present, Plaintiff Hamilton has serviced his vehicle in a timely and proper manner, including performing timely oil changes on the vehicle.

48.     On or about June 12, 2018, when his Civic had 10,127 miles on it, Plaintiff Hamilton checked the engine oil and noticed that it smelled like gasoline.

49.     Plaintiff Hamilton thereafter brought his Civic to Curry Honda and complained of the smell of gasoline in his oil. The service advisor noted that the

engine oil was "filled over the crank case" as detailed in the below service record:



50.     Despite Plaintiff Hamilton's complaint, the dealership did not admit to the existence of the Engine Defect, and instead said that there was "no problem found at this time."

51.     Plaintiff Hamilton has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Engine Defect, including, but not limited to, out of pocket loss associated with the Engine Defect and future attempted repairs and diminished value of his vehicle.

52.     Neither Defendant, nor its agents, dealers or other representatives informed Plaintiff Hamilton of the existence of the Engine Defect prior to

purchase.

**The Defendant**

53.     Defendant Honda is an automobile design, manufacturing, distribution, and/or servicing corporation doing business within the United States. Furthermore, Honda manufactures, distributes, markets, services, repairs, sells and leases passenger vehicles, including the Class Vehicles.

54.     Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the engines within the Class Vehicles were performed exclusively by Honda.

55.     Upon information and belief, Honda develops the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles.

56.     Honda engages in continuous and substantial business in Minnesota.

**TOLLING OF STATUTES OF LIMITATIONS**

57.     Any applicable statute(s) of limitations has been tolled by Honda's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Class Vehicles until shortly before this class action litigation was commenced.

58.     Honda was and remains under a continuing duty to disclose to

Plaintiffs and members of the Class the true character, quality and nature of the

Class Vehicles, and to disclose that the Class Vehicles will require costly repairs

and that the resale value of the Class Vehicles is diminished. As a result of the

active concealment by Honda, any and all statutes of limitations otherwise

applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.**    **The Engine Defect Within the Class Vehicles.**

59.    The Honda CR-V was introduced in the United States in 1996.  Honda

first introduced the Earth Dreams 2.4L engine in the model year 2015 CR-V.

Production of the fifth generation CR-V began in late 2016, with sales beginning

on or about December 21, 2016 as a 2017 model year.  The MY 2017-18 CR-V

vehicles were offered in "EX", "EX-L" and "Touring" trim levels and came

standard with the 1.5L turbocharged Earth Dreams engine while the "LX" trim

level came standard with the 2.4L Earth Dreams engine. (CR-V Class Vehicles).

60.    The Honda Civic was introduced in the United States in 1972.  The

tenth-generation Civic sedan, the subject of this matter, was first unveiled in

September 2015, for the 2016 model year. The MY 2016-18 Civic vehicles were

offered in "EX-T", "EX-L", "Touring" and "Si" trim levels and came standard

with the 1.5L turbocharged Earth Dreams engine while the "EX" and "LX" trims

came standard with the 2.0L Earth Dreams engine. (Civic Class Vehicles).

61.    Earth Dreams Technology is Honda's latest generation of engines which attempt to increase fuel efficiency and reduce environmental impact.  Honda attempts to accomplish these goals in the Class Vehicles by employing variable timing control, direct injection technology and use of an Atkinson cycle.  Upon information and belief, Honda has also implemented extensive friction reduction measures including reduced tension piston and oil control rings. The below picture depicts the 1.5L Earth Dreams engine contained in some of the Class Vehicles.



62.    As background, the engines contained in the Class Vehicles use four reciprocating pistons to convert pressure into a rotating motion. Gasoline is mixed with air in the combustion chambers of the engine. To generate such rotating

motion, a four-step sequence is used (the "Combustion Cycle"). First, the intake stroke begins with the inlet valve opening and a vaporized fuel mixture being pulled into the combustion chamber.  Second, in most vehicles the compression stroke would begin with the inlet valve closing and the piston beginning its movement upward, compressing the fuel mixture in the combustion chamber. However, in the Class Vehicles, the Atkinson cycle modifies that process by leaving the intake valve open for the first moments of the compression stroke, as the piston travels toward top dead center, which effectively lowers the compression ratio and reduces the force on the piston during the power stroke. Third, the power stroke begins when the spark plug ignites the fuel mixture, expanding the gases and generating power that is transmitted to the crankshaft. And fourth, the exhaust stroke begins with the exhaust valve opening and the piston moving back up, forcing the exhaust gases out of the cylinder. The exhaust valve then closes, the inlet valve opens, and the Combustion Cycle repeats itself. A diagram of a Combustion Cycle is below:



63.    In the Class Vehicles, a mixture of the unburned air and gasoline is pulled down by the piston, slipping by the piston and oil control rings, and going directly into the crankcase, which is the protective cover that insulates the crankshaft. This is commonly referred to as "blow-by" and it is undesirable because the unburned gasoline in the mixture enters the engine's crankcase and can significantly contaminate the engine oil contained in the oil pan.

64.    To reduce the risk of crankcase contamination and improve vehicle emissions, the positive crankshaft ventilation ("PCV") system was invented in the early 1960s. The PCV system involves the recycling of these unwanted gases through a valve (the "PCV valve") and circulates them back into the intake manifold, where they are pumped back into the cylinders for another chance at being burned during the combustion cycle.  A diagram of a typical PCV system is

below:



65.    In the Class Vehicles, the PCV system is simply inadequate to prevent

and address contamination of the crankcase.  This is because the volume of

contamination is so massive due to, *inter alia*, (1) the increased amount of

unburned fuel in the combustion chamber; and (2) increased blow-by as a result of

the reduced piston and oil control ring tensions resulting from the effort to decrease

overall friction within the engine in the hopes of gaining greater fuel efficiency.

66.    In the Class Vehicles, the engine pistons are connected to the

crankshaft via the connecting rods. As the connecting rods move up and down

during the Combustion Cycle, this causes the crankshaft to rotate, ultimately

resulting in power to the drive wheels of the vehicle. During this cycle, the crankshaft rotates many thousands of times per minute within each connecting rod. In order to reduce friction and increase longevity, this design utilizes a bearing placed between each connecting rod and multiple crankshaft surfaces. As a result, the connecting rod bearings allow the crankshaft to rotate within the connecting rods during the Combustion Cycle. An exemplar diagram of the piston, connecting rod, connecting rod bearing and crankshaft is shown below:





Figure 3-70.—Connecting rod bearings.

67.    When the Class Vehicles are in operation, engine oil is used to

lubricate the piston, cylinder wall, connecting rod bearings, main bearings and

other rotating and moving components as the pistons move up and down through

the four-stroke sequence. Engine oil is necessary to reduce wear on moving parts

throughout the engine, improve sealing, and cool the engine by carrying away heat

from the moving parts. Engine oil also cleans and transports contaminants away

from the engine to the engine oil filter. Oil is pumped and pressurized throughout

the engine by the oil pump. The oil pump draws oil from the oil pan, located

underneath the pistons and crankshaft. The oil pump forces engine oil through the

oil filter and then through passages in the engine to properly lubricate and reduce

friction in internal moving engine components. The oil then returns to the oil pan

through small drainage holes located throughout the engine where it will be recirculated by the oil pump. Below is a diagram illustrating the typical path and channels of engine oil lubrication in an overhead cam engine:



68.    The Engine Defect inherent in the Class Vehicles results in the build-up of non-combusted fuel within the engine's oiling system.  As the fuel builds up within the oiling system, the engine oil is diluted and begins to lose its lubricating properties.  This fuel-contaminated engine oil no longer properly coats the bearing surfaces, compromising the integrity of the oil barrier between the bearings and the corresponding metal parts which they are designed to protect. When the Engine Defect manifests, it results in excessive and frequent contact between the connecting rods and connecting rod bearings, as well as the crankshaft and main bearings. This contact causes accelerated wear within the engine and on the bearing surfaces in the Class Vehicles.

69.     Additionally, the Engine Defect causes the crankcase of the Class Vehicles to become overfilled with fuel-contaminated oil. As a result, the engine oil level can come in contact with the crankshaft. When this happens, it is turned (or aerated) by the crankshaft thereby becoming oxygenated and of a foamy quality.  This oxygenated oil mixture fails to lubricate effectively and will often result in overheating as well as damage to the engine's moving parts.  In some cases, there may even be a loss of oil pressure since aerated oil can result in oil pump cavitation.  Per the below diagrams from the Owner's Manual of a Class Vehicle, Honda is well aware that excessive oil in the crankcase will result in damage to the Class Vehicles:[3]



---

[3] Honda, 2017 Honda CR-V Owner's Guide, http://techinfo.honda.com/rjanisis/pubs/QS/AH/ATLA1717OG/enu/ATLA1717OG.pdf (last visited Nov. 28, 2018).



70.     Regardless of this known risk, Honda instructs Class Members to continue to drive their Class Vehicles and simply change the engine oil more frequently, and in some instances recommends that class members change their Vehicle's oil every 500 miles. This results in a previously undisclosed increase in the cost of maintenance for Class members due to the Engine Defect. Additionally, this results in a greater impact on the environment due to the necessary and frequent disposal of contaminated engine oil due to the Engine Defect.

**B.    Honda's Knowledge of the Engine Defect**

71.     After numerous reports of high engine oil levels and fuel smells reported by Honda customers in northern China, where cooler temperatures are common, Honda ordered a recall of 350,000 vehicles in February 2018.

72.     In approximately March 2018, Honda halted the sales of the Class

Vehicles in China, after a Chinese watchdog rejected Honda's plan to recall the vehicles to attempt to fix the Engine Defect.[4]  "The company needs to improve the recall plans further," the watchdog said, suggesting Honda could extend the warranty coverage period of the affected vehicles.[5]  Until a new recall is agreed upon, Honda issued a stop-sale on all new CR-Vs in China.

73.    Similarly, on February 28, 2018 Honda Canada, Inc. sent a notice to its Canadian dealerships regarding complaints of misfires and oil pressure warnings in the Class Vehicles.  Honda Canada further advised that these issues have "been associated with high engine oil level due to fuel or water contamination."  A copy of this notice is below:

---

[4] Norihiko Shirouzu, *Honda stops selling new CR-Vs in China after recall plan rejected*, Reuters (Mar. 2, 2018, 6:41 A.M.), https://www.reuters.com/article/us-honda-china-recall/honda-stops-selling-new-cr-vs-in-china-after-recall-plan-rejected-idUSKCN1GE1P8.
[5] *Id.*



74.     Despite acknowledging the Engine Defect in China, Honda has not done so in the United States and continues to deny the existence of the Engine Defect to Class Members.

75.     Furthermore, Honda's failure to notify the general public or the owners or lessees of the Class Vehicles of the Engine Defect is particularly egregious because after the Engine Defect manifests, the Class Vehicles may suffer catastrophic engine failure while in use, resulting in a very dangerous situation. Drivers and occupants can even be left stranded, placing them at an increased risk of injury.

76.     Engines are designed to function for periods (and mileages) substantially in excess of those specified in Honda's warranties, and given past

experience, consumers legitimately expect to enjoy the use of an automobile without worry that the engine will fail for significantly longer than the limited times and mileages identified in Honda's warranties.

77.    Honda markets its vehicles as particularly reliable when compared to the competition.[6]

78.    Automobiles must incorporate designs that are able to withstand foreseeable usage conditions. A vehicle can suffer extensive damage and costly repairs from customary environmental and usage conditions when a vehicle suffers from a defect.

79.    In many instances, consumers have incurred and will continue to incur expenses for repair and/or replacement of the engines despite such Engine Defect existing in the Class Vehicles when manufactured by Honda.

80.    Upon information and belief, Honda, through (1) its own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal pre-sale durability testing and TSBs, and (5) other various sources, were well aware of the Engine Defect but failed to notify customers of the nature and extent of the problems with Class Vehicle engines or to provide any

---

[6] *See, e.g.,* Honda Automobile Awards, https://automobiles.honda.com/awards (last visited Nov. 29, 2018).

adequate remedy.

81.     Honda failed to adequately research, design, test and/or manufacture the engines and PCV systems in the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

82.     Honda is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Honda conducts tests, including pre-sale durability testing on incoming components such as engines, to verify that the parts are free from defect and align with Honda's specifications.

83.     Honda's pre-sale durability testing includes five metrics that allegedly "ensure high quality" by conducting "comprehensive quality assurance activities from the dual perspectives of design and manufacturing."[7] Honda admits that its "production departments implement manufacturing controls to keep variability within applicable standards based on drawings and develop production processes so that all workers can continue to achieve a consistent level of quality."[8] Thus, Honda knew or should have known of the Engine Defect through its

---

[7] Honda, *Quality Initiatives*, https://web.archive.org/web/20170719214241/http://world.honda.com/sustainability/quality/initiative/design-development-production/ (site indexed by web.archive.org on July 19, 2017) (last visited Nov. 29, 2018). *See also* Exhibit A, pp. 54-55, 60.
[8] *Id.*

comprehensive quality assurance activities and manufacturing controls.

84.    First, Honda's "engineers utilize a database of measures and techniques previously used to prevent market quality issues and other information as they communicate closely with manufacturing departments during the initial development stage. Product function, performance and quality assurance initiatives are committed to writing and are shared to ensure efforts are coordinated with production departments' process assurance activities and to coordinate quality assurance initiatives."[9]

85.    Second, "Honda's production departments establish manufacturing control items and criteria for each part, process, and operation to prevent product quality issues."  These controls are explicitly put in place to "prevent product quality issues" whereby Honda's engineers "use these manufacturing control items and criteria to verify manufacturing variability as they work to prevent quality issues."[10]

86.    Third, for outsourced parts, Honda visits its suppliers' manufacturing facilities to conduct quality audits based on the "'Three Reality Principle,' which emphasizes 'going to the actual place,' 'knowing the actual situation' and 'being realistic.'" Honda uses "[e]xperts in the development and production of individual

---

[9] *Id.*
[10] *Id.*

parts [to] visit manufacturing facilities and conduct audits of suppliers' quality

systems and their implementation."[11]

87.     Fourth, and perhaps most importantly, Honda assures long-term

reliability of its parts and vehicles through "meticulous durability testing." Honda

states the following about this metric:

> Honda subjects new and redesigned models to a rigorous regimen of
> long-distance durability testing before beginning mass production to
> verify that there are no quality issues.
>
> *We also disassemble vehicles used in the test drives into every single
> part and verify that there are no quality issues through a process
> consisting of several thousand checks.* By accumulating data on the
> issues discovered through these test drives and detailed inspections as
> well as associated countermeasures, we are able to ensure a high level
> of quality and reliability.[12]

88.     Fifth, Honda developed and implemented the "Line End Tester," an

inspection and diagnostic system that is used "in shipping quality inspections of all

electronic control systems, from switches and instruments to air conditioner, audio,

engine and transmission operations."[13]

89.     Through these quality control metrics, Honda knew or should have

known that the engines in the Class Vehicles were defective.

90.     Lastly, as explained in Honda's Sustainability Report:

When Honda determines that an issue occurs with a product that requires

---

[11] *Id.*

[12] *Id.* (emphasis added).

[13] *Id.*

market action, it quickly reports the issue to government authorities in accordance with countries' regulations and contacts owners by means of direct mail from dealers or by telephone to provide information about how they can receive free repairs. Associated information is also provided on Honda's website and through the news media as necessary.[14]

91.     Despite such assurances and procedures, Honda has not contacted Class Members by direct mail or telephone to inform them how they can receive free repairs related to the Engine Defect within the United States. Additionally, upon information and belief, Honda has also not provided associated information regarding the Engine Defect on its website or through the news media.

92.     Per the warranty outlined below, Honda also expressly warranted the Class Vehicles to be free from defects for a period of three years or 36,000 miles under the New Vehicle Limited Warranty and 5 years or 60,000 miles under the Powertrain Limited Warranty.[15] Both warranties are applicable to the Engine Defect; however, Honda has failed to correct the issue.

---

[14] Honda, 2018 Sustainability Report, https://world.honda.com/sustainability/report/pdf/2018/Honda-SR-2018-en-065-078.pdf (last visited Nov. 29, 2018).

[15] Honda, 2018 Honda Warranty Basebook, http://owners.honda.com/Documentum/Warranty/Handbooks/2018_Honda_Warranty_Basebook_AWL05251_FINAL.pdf (last visited Nov. 29, 2018).

## New Vehicle Limited Warranty

**Time and Mileage Period**

This warranty begins on the date the vehicle is put into use in one of the following ways:

- The vehicle is delivered to the first purchaser by a Honda automobile dealer.
- The vehicle is leased.
- The vehicle is used as a demonstrator or company vehicle.

Your vehicle is covered for 3 years or 36,000 miles, whichever comes first. Some parts may have separate coverage under other warranties described in this book.

**Warranty Coverage**

Honda will repair or replace any part that is defective in material or workmanship under normal use. See Proper Operation on page 35. All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires.

**This New Vehicle Limited Warranty Does Not Cover:**

- Normal wear or deterioration of any part.
- Cleaning and polishing.
- The adding of any fluids, unless they are needed as part of a warranty repair.
- Broken, chipped, or scratched window glass unless it is due to a defect in material or workmanship.
- Any item concerning your vehicle's general appearance that is not due to a defect in material or workmanship. Cosmetic flaws or minor damage to the body, paint, or other items may occur during manufacture or shipping of your vehicle. If you find any uncorrected flaws or damage on your new vehicle, notify the dealer as soon as possible after delivery.

- Expendable maintenance items (such as filters, or brake pads/linings) when replaced due to normal wear or customer abuse.

**Limited Warranty Coverage**

- Original equipment batteries for key fobs and remotes are covered for the first 6 months of ownership.
- Original equipment wiper blade inserts are covered for the first 6 months of ownership.
- Wheel balancing and wheel alignment are covered for the first year or 12,000 miles, whichever comes first, unless required as part of a warranty repair.
- Air conditioner refrigerant is covered for the first 2 years or 24,000 miles, whichever comes first, unless required as part of a warranty repair.

Your Warranties in Detail | 9

---

## Powertrain Limited Warranty

**Time and Mileage Period**

This warranty's coverage begins on the same date as the New Vehicle Limited Warranty (see page 9).

Your powertrain is covered for 5 years or 60,000 miles, whichever comes first.

Some powertrain parts may have additional coverage under other warranties described in this book.

**Warranty Coverage**

Honda will repair or replace any part that is defective in material or workmanship under normal use. See Proper Operation on page 35. All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this Powertrain Limited Warranty expires.

**Parts Covered by the Powertrain Warranty**

Your vehicle may not be equipped with all the parts listed. Other parts may be covered. Contact an authorized Honda automobile dealer or Honda Automobile Customer Service (see inside front cover of this booklet) for further information.

*Engine*
Cylinder block and head and all internal parts, timing gears and gaskets, timing chain/belt and cover, flywheel, valve covers, oil pan, oil pump, intake and exhaust manifolds, engine mounts, engine/powertrain control module, water pump, fuel pump, seals and gaskets.

*Transmission and Transaxle*
Case and all internal parts, torque converter, transfer case and all internal parts, transmission/powertrain control module, seals and gaskets.

*Front-Wheel-Drive System*

Final drive housing and all internal parts, driveshafts, constant velocity joints, front hubs and bearings, seals and gaskets.

*Rear-Wheel-Drive System*

Differential housing and all internal parts, propeller shafts, universal joints, driveshafts, constant velocity joints, rear hubs and bearings, seals and gaskets.

For a list of items not included in this warranty, please refer to page 9.

93.     Buyers, lessees, and other owners of the affected Vehicles were without access to the information concealed by Honda as described herein, and therefore reasonably relied on Honda's representations and warranties regarding the quality, durability, and other material characteristics of the Vehicles. Had these buyers and lessees known of the defect and the potential harm, they would have taken steps to avoid that harm, and/or would have paid less for the Vehicles than the amounts they actually paid, or would not have purchased the Vehicles.

**C.     Complaints by Other Class Members.**

94.     Plaintiffs' experiences are by no means an isolated or outlying occurrence. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Engine Defect within the Class Vehicles.[16]

95.     Class Vehicle owners have publicly complained to the United States government about the Engine Defect in Class Vehicles since the vehicle has been released. The Office of Defects Investigation (ODI) is an office within the National Highway Traffic Safety Administration (NHTSA). ODI conducts defect investigations and administers safety recalls to support the NHTSA's mission to

---

[16] *See, e.g.*, Car Problems, *Other Fuel System Problems of the Honda CR-V – part 1*, http://www.carproblemzoo.com/honda/cr-v/other-fuel-system-problems.php (last visited Nov. 29, 2018).

improve safety on the Nation's highways. [17] All automobile manufacturers

routinely monitor and analyze NHTSA complaints because this information is used

in determining if a recall should be issued.

96.    The following is just a small sampling of the many complaints

submitted to ODI by Honda CR-V owners. These publicly available complaints,

filed as early as March 2016, evidence Honda's prior knowledge of the Engine

Defect, the negative experiences encountered by Class Members, and the financial

burden placed on them.


NHTSA ID Number: 10864030

Date of Incident: 03/22/2016

Consumer Location: FOX POINT, WI

Vehicle Identification No. (VIN): 5J6RM4H74GL...

SUMMARY:

THE CABIN OF MY BRAND NEW VEHICLE FILLS WITH GAS FUMES RANDOMLY
WHILE THE ENGINE IS RUNNING. THE FUMES FILL THE CABIN WHILE IDLING,
STARTING, AND DRIVING DOWN THE ROAD. THE FUMES ARE VERY STRONG
AND I DO NOT FEEL SAFE DRIVING THIS VEHICLE FOR ANY DISTANCE. THE
HONDA DEALERSHIP SERVICE DEPARTMENT AND THE HONDA TECH CENTER
ARE AWARE OF THE PROBLEM BUT DO NOT HAVE A REMEDY.


NHTSA ID Number: 11084545

Date of Incident: 09/13/2016

---

[17] *See* NHTSA, *Motor Vehicle Defects and Safety Recalls: What Everyone Should Know*, https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm (last visited Nov. 29, 2018). Indeed, automobile manufacturers are required by law to report any potential safety defects to the United States government.

Consumer Location: WAUWATOSA, WI

Vehicle Identification No. (VIN): 2HKRM4H73GH...

SUMMARY:

GAS FUMES IN PASSENGER CABIN. WE GET GAS FUMES IN THE PASSENGER CABIN ON A REGULAR BASIS. NO GAS LEAKING ON GROUND THAT WE CAN SEE. HAPPENS MORE OFTEN AFTER CAR HAS BEEN IDLING FOR A BIT. GAS FUMES STAY IN CABIN WHILE DRIVING.


NHTSA ID Number: 11075842

Incident Date November 20, 2017

Consumer Location DULUTH, MN

Vehicle Identification Number 5J6RW2H5XHL****

Summary of Complaint

GAS IS MIXING IN THE OIL OF OUR NEW 2017 HONDA CR-V. THE 1.5 LITER ENGINE DOES NOT WARM UP SUFFICIENTLY IN COLD WEATHER, RUNS RICH, AND LEAVES UN-COMBUSTED GAS IN THE OIL. THIS TRIGGERS ENGINE WARNING LIGHTS AND REQUIRES FREQUENT OIL CHANGES. ENGINE PERFORMANCE AND DRIVABILITY SUFFER. THIS PROBLEM IS ALSO BEING REPORTED ON SOCIAL MEDIA BY OTHER HONDA CR-V OWNERS WHO DRIVE IN COLDER CLIMATES. WE ARE CONCERNED THAT IT IS CAUSING LONG TERM DAMAGE TO THE ENGINE OF OUR NEW VEHICLE. I CAUTION PROSPECTIVE BUYERS TO POSTPONE THE PURCHASE OF A 2017 OR NEWER HONDA CR-V WITH THE 1.5 LITER ENGINE UNTIL HONDA SOLVES TO THIS PROBLEM. THE FIFTH GENERATION CR-V IS AN EXCELLENT CAR IN MANY RESPECTS, BUT THIS IS A MAJOR PROBLEM. I CANNOT RECOMMEND THE CAR, PARTICULARLY TO THOSE WHO DRIVE IN COLDER CLIMATES, UNTIL A FIX IS FOUND.

REUTERS REPORTED IN FEBRUARY THAT HONDA HAS ANNOUNCED A RECALL OF 350,000 CR-V'S IN CHINA FOR WHAT APPEARS TO BE A SIMILAR ISSUE.

WE'VE DRIVEN OUR CAR FOR ABOUT SIX MONTHS, AND IT HAS LESS THAN 2,000 MILES ON IT. WE TYPICALLY USE THE CAR FOR SHORT DRIVES WITHIN THE CITY. OUR CAR WAS AT THE DEALER FOR OVER TWO WEEKS WHEN THE PROBLEM FIRST OCCURRED. A FIELD REP FROM HONDA WAS SENT OUT TO THE DEALER TO TRY TO ASSIST. SENSORS AND FUEL INJECTORS WERE REPLACED. THE OIL AND FILTER WAS CHANGED. AT THIS TIME OUR ENGINE HAD LESS THAN 1100 MILES ON IT.

THESE REPAIRS DID NOT CORRECT THE PROBLEM. IN MID-JANUARY THE ENGINE WARNING LIGHTS WERE TRIGGERED AGAIN. OUR DEALER NOTED THE SMELL OF GAS IN OUR OIL AND ONCE AGAIN CHANGED THE OIL AND

FILTER. WE HAD LESS THAN 1500 MILES ON THE CAR FOR THIS SERVICE.

HONDA DOES NOT APPEAR TO HAVE A SOLUTION TO THIS PROBLEM. THE OIL AND FILTER CHANGES ARE A BANDAID, AND LONG TERM DAMAGE MAY BE OCCURRING TO OUR ENGINE. HONDA MAY HAVE A MAJOR PROBLEM ON ITS HANDS WITH THE 1.5 LITER ENGINE.


NHTSA ID Number: 11072826

Date of Incident: 12/19/2017

Consumer Location: HAYWARD, WI

Vehicle Identification No. (VIN): 2HKRW2H57HH...

SUMMARY:

GAS IN GETTING IN CRANKCASE OIL ON BRAND NEW ENGINE. STARTED FROM DAY ONE. IT IS WASHING DOWN CYLINDER WALLS,, DILUTING THE OIL AND CAUSING PREMATURE ENGINE FAILURE. I AM SCARED TO DEATH IT WILL BLOW UP AT HIGHWAY SPEEDS AND CAUSE MY DEATH.


NHTSA ID Number: 11076415

Incident Date January 6, 2018

Consumer Location SILVER BAY, MN

Vehicle Identification Number 2HKRW2H80HH****

Summary of Complaint

JANUARY 6TH, 2018 CAR SMELLED OF EGGS AND GAS. DROVE CAR 70 MILES THE EMMISIONS AND ENGINE LIGHT CAME ON AND CAR WAS TOWED FROM A BUSY HWY 61 MN TO HONDA SERVICE CENTER. THEY HAD CRV FOR 3 WEEKS. CHANGED OIL & PROGRAMMED INJECTORS THE OIL HAD 1QUART OVER OF GAS MIXED INTO THE OIL. 700 MILES LATER AND CAR NOW HAS GAS MIXED INTO OIL AGAIN AND OVER THE ORANGE DIPSTICK AND SMELLS OF VERY STRONG GAS. A SERVICE APPOINTMENT MADE FOR MARCH 14TH, 2018 FOR OIL CHANGE, RATTLE IN THE DASH BEHIND HEAD UNIT AND THE HEAT PROBLEM AS WELL. THE NO HEAT FOR WINTER DRIVING WITH FROZEN WINDSHIELD BEFORE DRIVING AND WHILE DRIVING IS VERY DANGEROUS! BREAKING DOWN ON A INTERSTATE HWY IS ALSO DANGORUS WAITING 4 HOURS WITH NO HEAT IN CAR AT -1 TEMP WAITING FOR TOW IS DANGORUS. NOT HAPPY ABOUT THIS AT ALL!


NHTSA ID Number: 11098079

Date of Incident: 01/10/2018

Consumer Location: MILLVILLE, NJ

Vehicle Identification No. (VIN): 2HKRW2H51HH...

SUMMARY:

I HAVE HAD THE BRAKES ENGAGE TWICE THROUGH THE COLLISION AVOIDANCE SYSTEM WITH NO OTHER VEHICLES AROUND ME.DANGEROUS AS I COULD BE REAR ENDED.AND THE OIL LEVEL RISES WITH FUEL DILUTION AND GAS FUMES ENTER THE PASSENGER COMPARTMENT.VEHICLE MISFIRED AND SHUTDOWN ON HIGHWAY DANGEROUS SITUATION AND BREATHING GAS FUMES.


NHTSA ID Number: 11081970

Date of Incident: 02/05/2018

Consumer Location: CINNAMINSON, NJ

Vehicle Identification No. (VIN): 2HKRW2H58HH...

SUMMARY:

THE 1.5 TURBO ENGINE'S ALL EXPERIENCE A COOLANT HEATING UP UNDER 32DEGREES F PROBLEM. AT IDLE THE TEMPERATURE COOLS DOWN AND HEATER DOES NOT SUPPLY WARM AIR. ALSO THE ENGINE OIL IS BEING DILUTED BY AN OVERLY RICH MIXTURE CAUSING UNBURNED GAS TO ENTER THE CRANKCASE DILUTING THE ENGINE OIL AND CAUSING ENGINE DAMAGE. DEALER HAS NO CLUE WHEN I TOOK IT IN TO WHY SO I HAVE TO CHANGE OIL EVE3RY 1000 MILES TO PROTECT THE ENGINE


NHTSA ID Number: 11072515

Date of Incident: 02/13/2018

Consumer Location: BURLINGTON, MA

Vehicle Identification No. (VIN): 5J6RM4H43GL...

SUMMARY:

FROM NEW, THE CABIN FILLS WITH NOXIOUS GAS FUMES. HONDA DEALERSHIP SAYS HONDA IS AWARE OF THE PROBLEM BUT WILL NOT DO ANYTHING TO FIX IT AS THEY ARE UNAWARE OF A FIX. UNACCEPTABLE FROM HONDA

NHTSA ID Number: 11097244

Incident Date February 14, 2018

Consumer Location BRIDGEWATER, VA

Vehicle Identification Number 2HKRW2H52HH****

Summary of Complaint

OIL/DILUTION ON DIP STICK. GAS SMELL ON DIP STICK. OVERFILLED DIP STICK.


Date of Incident: 02/20/2018

NHTSA ID Number: 11081944

Consumer Location: LOS ANGELES, CA

Vehicle Identification No. (VIN):

SUMMARY:

ENGINE OIL IS OVERFILLING AND BEING DILUTED WITH GAS. STRONG GAS SMELL. WHEN CHANGING OIL, MORE THAN WHAT WAS NEEDED TO FILL ENGINE OIL TO FULL


NHTSA ID Number: 11078754

Incident Date February 22, 2018

Consumer Location ASHLAND, WI

Vehicle Identification Number 5J6RW2H8XHL****

Summary of Complaint

I PURCHASED A 2017 CRV FROM ASHLAND HONDA AND TOYOTA IN ASHLAND, WI IN AUGUST 2017. ON FEBRUARY 23, 2018, MY CAR WHICH HAS 5500 MILES ON IT, STARTED MAKING A HORRIBLE NOISE AND BEGAN LOSING POWER WHILE ON THE HIGHWAY. THE NOISE CONTINUED THROUGHOUT THE WEEKEND. WE MADE AN APPOINTMENT WITH ASHLAND HONDA AND TOYOTA TO SERVICE THE CALL.

HONDA CORPORATE AND THE SERVICE MANAGER (JERRY) AT ASHLAND HONDA AND TOYOTA DETERMINED THROUGH VIDEO CHATS AND CONFERENCE CALLS THAT THE CAMS WERE DESTROYED IN MY ENGINE. THEY BELIEVE THIS HAD TO DO WITH FUEL AND OIL MIXING AND GETTING INTO THE ENGINE. HONDA REQUESTED THAT ASHLAND HONDA REPLACE THE HEAD OF THE ENGINE. THEY HAVE NO FIX FOR THE PROBLEM WITH THE FUEL AND OIL MIXING AND DESTROYING THE ENGINE. THE SERVICE MANAGER

SAID BECAUSE THE GOVERNMENT IS INVOLVED DUE TO EMISSIONS, THIS ISSUE WILL BE CONTINUING, AND AT THIS TIME THERE IS NO FIX. HE ALSO STATED THAT CORPORATE INFORMED HIM THIS WAS A REGIONAL ISSUE DUE TO OUR CLIMATE, AND THEY ARE CURRENTLY TRYING TO FIGURE OUT A SOFTWARE FIX FOR THE PROBLEM. NO RESOLUTION AT THIS POINT. CORPORATE FURTHER STATED THAT THEY ARE SEEING THIS ISSUE WHEN THE TEMPERATURE IS BETWEEN 10 AND 30 DEGREES. I WAS OFFERED A 100,000 EXTENDED WARRANTY AND RECOMMENDED THAT I GO TO THE DEALER EVERY 500 MILES TO GET AN OIL CHANGE TO SEE IF FUEL IS MIXING WITH THE OIL. SHOCKED AT THE LACK OF RESOLUTION, I ASKED THE SERVICE MANAGER IF HONDA CORPORATE WAS COMFORTABLE GIVING ME MY CAR BACK AFTER THE CAMS WERE REPLACED WITH NO RESOLUTION, AND HE SAID YES.

I DO NOT BELIEVE THIS IS ETHICAL AT ALL FOR HONDA TO NOT HAVE A FIX TO AN ENGINE PROBLEM THAT COULD ENDANGER MYSELF AND/OR MY FAMILY. THE CAR ENGINE IS BEING REPLACED WHEN PARTS ARE DELIVERED. AGAIN, NO RESOLUTION TO THE PROBLEM WITH THE OIL AND GAS COMBINING AND FIXING ISSUE.


NHTSA ID Number: 11079561

Incident Date March 8, 2018

Consumer Location ACTON, MA

Vehicle Identification Number 5J6RW2H58HL****

Summary of Complaint

I PURCHASED A 2017 HONDA CRV-EX WITH THE 1.5 TURBO ENGINE IN NOVEMBER 2017 AND PLAN TO GIVE THIS CAR TO MY NIECE AS A GRADUATION PRESENT IN 2019. I TOOK IT FOR ITS FIRST OIL CHANGE, AT 137 MILES, AND THE DEALER TOLD ME THAT THERE WAS GASOLINE IN THE OIL. AFTER THE OIL CHANGE, I RESEARCHED THE ISSUE AND DISCOVERED THAT MANY PEOPLE (2017 HONDA CRV OWNERS WITH THE 1.5 TURBO ENGINE) IN THE USA HAD THIS PROBLEM. THE DETAILS ARE LISTED IN THE HONDA FORUMS AND ON EDMUNDS. I ALSO SAW THAT HONDA WAS RECALLING 350K 2017-2018 CRVS WITH THE 1.5 TURBO ENGINE , IN CHINA, AS THE SOFTWARE NEEDED TO BE UPDATED. IT APPEARS THAT THE FUEL EJECTORS WERE SUPPLYING TOO MUCH GASOLINE AND THE RESIDUAL GASOLINE WAS LEAKING AROUND THE CYLINDERS INTO THE OIL. I REQUESTED HONDA-USA TO GET ACCESS TO THIS SOFTWARE UPDATE VIA MY LOCAL DEALER (BOCH HONDA WEST IN WESTFORD, MA). IT IS MY UNDERSTANDING THAT THE SOFTWARE UPDATE IS AVAILABLE. HONDA-USA SENT ME A RESPONSE INDICATING THAT THERE WAS NO RECALL ON MY VEHICLE AND I SHOULD GO BACK TO THE DEALER. I HAVE CALLED THE DEALER, AGAIN, BUT THEY CANNOT DO MUCH WITHOUT THE SOFTWARE UPDATE. I TOLD HONDA-USA

THAT THIS PROBLEM IS VERY CONCERNING FOR THE FUTURE OF THE ENGINE REMINDED THEM THAT THEIR DEALER FOUND THE PROBLEM OF GASOLINE IN THE ENGINE AND THAT BOTH I AND THE DEALER WERE CONCERNED. MY CASE NUMBER WITH HONDA IS 07116734. SOME OF THE WEB SITES (LINKS) THAT FURTHER DEFINE THE PROBLEM ATE AS FOLLOW: 1) HTTPS://WWW.REUTERS.COM/ARTICLE/US-HONDA-CHINA-RECALL/HONDA-STOPS-SELLING-NEW-CR-VS-IN-CHINA-AFTER-RECALL-PLAN-REJECTED-IDUSKCN1GE1P8 2) HTTP://WWW.CRVOWNERSCLUB.COM/FORUMS/14-PROBLEMS-ISSUES/170193-POTENTIAL-MAJOR-ISSUE-2017-CR-V-GASOLINE-GETS-INTO-ENGINE-OIL-TANK.HTML 3) HTTPS://FORUMS.EDMUNDS.COM/DISCUSSION/50438/HONDA/CR-V/NEW-CR-V-COLD-WEATHER-RUNS-RICH-GAS-IN-OIL-MULTIPLE-COMPLAINTS

NHTSA ID Number: 11081991

Date of Incident: 03/08/2018

Consumer Location: HUNTLEY, IL

Vehicle Identification No. (VIN): 5J6RW2H80HL...

SUMMARY:

WE PURCHASED OUR HONDA CRV EX-L IN OCTOBER OF 2017, WITHIN 5 MONTHS WE NOTICED A STRONG GASOLINE SMALL IN OUR CABIN. ONE DAY I CHECKED THE OIL LEVEL BY PULLING THE DIPSTICK AND NOTICED THAT THE OIL LEVEL WAS 1 FULL INCH ABOVE THE FULL MARK. I ALSO NOTICED THAT THE OIL ON THE DIPSTICK REEKED OF GAS AND WAS VERY DARK AND WATERY. I IMMEDIATELY DID A GOOGLE SEARCH OF THIS ISSUE, KNOWING THAT OUR LAST OIL CHANGE WAS LESS THAN 3,000 MILES AGO FROM OUR LOCAL HONDA DEALER AND I WAS SHOCKED WITH THE RESULTS. THOUSANDS OF OWNERS WITH THE 2017-2018 CRV WITH THE 1.5 LITER TURBO ENGINE ARE HAVING THIS EXACT SAME ISSUE. THE ISSUE IS CALLED OIL DILUTION AND A LARGE AMOUNT OF GAS IS GETTING INTO THE OIL BUT THE REASONS ARE UNKNOWN. I IMMEDIATELY CALLED MY LOCAL DEALER AND HAD MY CAR IN THE NEXT DAY. THEY CLAIMED THEY HAVE NEVER SEEN ANYTHING LIKE THIS BEFORE AS MY OIL HAD SO MUCH GASOLINE IN IT THAT IT POURED OUT LIKE WATER. THEY SCHEDULED A CALL WITH HONDA ENGINEERS THE FOLLOWING MONDAY AND THEY WERE ADVISED TO CHANGE THE OIL AND DRIVE THE CAR AGAIN. THEY DID SO AND THE GAS VOLUME FILLED UP VERY QUICKLY IN THE NEW OIL SO THE NEXT STEP WAS TO REPLACE THE FUEL INJECTORS. BASED ON MY RESEARCH ONLINE MANY OTHER OWNERS HAVE HAD THE SAME PROCEDURE PERFORMED WHICH DIDN'T FIX THE ISSUE. HOWEVER THE INJECTORS WERE REPLACED ON MY CAR AND THE VEHICLE WAS GIVEN BACK TO ME, CLAIMED TO HAVE BEEN FULLY FIXED. NEEDLESS TO SAY LESS THAN 2 WEEKS AFTER I GOT MY VEHICLE BACK I CHECKED THE OIL LEVEL AND ONCE AGAIN IT'S WELL

ABOVE THE FULL MARK WITH A STRONG SMELL OF GASOLINE. I'VE CALLED
HONDA CORPORATE AND THEIR CUSTOMER SERVICE JUST PLAIN SUCKS.
LACK OF EMPATHY, LACK OF ACKNOWLEDGEMENT OF THIS BEING A
WIDESPREAD ISSUE AND NO RESOLUTION OF CONCERNS. I'M CURRENTLY
FIGHTING WITH THEM, PLEADING TO GET A EXTENSION ON THE POWERTRAIN
WARRANTY AS THERE IS NO DOUBT THAT ENGINE DAMAGE HAS ALREADY
OCCURRED

NHTSA ID Number: 11080270

Incident Date March 17, 2018

Consumer Location LIVERPOOL, NY

Vehicle Identification Number 5J6RW2H58HL****

Summary of Complaint

GAS IS LEAKING INTO CRANKCASE AND DILUTING THE ENGINE OIL
THEREFORE RAISING THE OIL LEVEL ABOVE THE MAX FILL LINE. ENGINE OIL
HAS GAS ODOR AND OIL SEEMS THINNER DUE TO DILUTION WITH GASOLINE.

NHTSA ID Number: 11080300

Incident Date March 16, 2018

Consumer Location RALEIGH, NC

Vehicle Identification Number 7FARW1H91HE****

Summary of Complaint

THE OIL LEVEL IN THE CRANK CASE CONTINUALLY RISES AND SMELLS
STRONGLY OF GASOLINE. WITHIN 5000 MILES, AND 40% OIL LIFE ACCORDING
TO THE MAINTENANCE MINDER, IT HAD RISEN WELL ABOVE THE MAX LINE
ON THE DIP STICK.

NHTSA ID Number: 11081407

Incident Date March 18, 2018

Consumer Location WILLIAMSPORT, PA

Vehicle Identification Number 2HKRW2H94HH****

Summary of Complaint

MY CAR IS A 2017 HONDA CRV TOURING WITH THE 1.5 LITER TURBOCHARGED
ENGINE AND 3200 MILES. ON 3/18/2018 I WAS DRIVING AT 70MPH ON

INTERSTATE 180 IN PENNSYLVANIA WHEN THE CAR SUDDENLY SLOWED, LOST POWER, THE CHECK ENGINE LIGHT CAME ON, AND MULTIPLE ELECTRICAL SYSTEMS REPORTED MALFUNCTIONS IN THE DASH DISPLAY.

THE CAR WAS TOWED TO THE HONDA DEALER AND DIAGNOSED WITH EXCESS GAS (APPROXIMATELY ONE QUART) IN THE OIL. THE OIL AND FILTER WAS CHANGED AS A TEMPORARY SOLUTION, AND A TECH LINE CASE (REF # 4089104) WAS OPENED WITH HONDA. I WAS TOLD AT THIS TIME THERE IS NO PERMANENT RECALL OR FIX. I WAS ADVISED THAT THIS IS A KNOWN PROBLEM IN COLD CLIMATES WHERE THE CAR IS USED FOR SHORT DRIVES AND DOES NOT WARM UP COMPLETELY. SINCE THEN I HAVE LEARNED THAT ALL CRVS WITH THE 1.5 LITER TURBOCHARGED ENGINE HAVE BEEN RECALLED IN CHINA FOR THE SAME PROBLEM.


NHTSA ID Number: 11080313

Date of Incident: 03/19/2018

Consumer Location: HILLSBORO, OR

Vehicle Identification No. (VIN): 2HKRW2H57HH...

SUMMARY:

I CHECKED THE LEVEL OF THE OIL ON THE DIPSTICK AND THE LEVEL SHOWS AS BEING HIGH, PAST THE 'FULL" REFERENCE POINT WITH A FEW MILLIMETERS. ALSO, THE OIL HAS A STRONG GAS ODOR. THE MILEAGE ON THE ENGINE IS 8454, AND THE FIRST OIL CHANGE WAS PERFORMED AT 6547 MILES, 2 MONTHS AGO.


NHTSA ID Number: 11098691

Date of Incident: 04/06/2018

Consumer Location: PLAINVIEW, MN

Vehicle Identification No. (VIN): 5J6RW2H51HL...

SUMMARY:

DURING THE FIRST OIL CHANGE WE REMOVED OVER 5 QUARTS OF LIQUID. THE OWNERS MANUAL STATES THAT THE CAR HOLDS ONLY 3.7 QUARTS OF OIL. WE CONTACTED THE DEALERSHIP WE BOUGHT IT FROM AND THEY INFORMED US THAT THIS IS A KNOWN ISSUE FOR THE 2017 HONDA CR-V. GAS IS GETTING INTO THE OIL. I AM NOW GETTING FREE OIL CHANGES, THEY STATED I SHOULD COME IN FOR AN OIL CHANGE WHENEVER THE LIQUID RISES ABOVE THE FILL LINE ON THE DIPSTICK. I HAVE MANAGED TO GET AN OIL CHANGE EVERY 7010 DAYS SINCE APRIL 12, 2018. THE LAST OIL CHANGE I

HAD THERE WAS AT LEAST 1 QUART OF GAS IN THE OIL DRAINED OUT OF THE RESERVOIR. THAT WAS 10 DAYS AFTER THE LAST OIL CHANGE. I HAVE CONTACTED HONDA NUMEROUS TIMES AND THE ONE TIME I ACTUALLY TALKED TO MY CASE MANAGER SHE TOLD ME THAT IT WAS NORMAL OPERATION AND HONDA IS NOT CONSIDERING THIS AN ISSUE. EVERYTHING I HAVE READ SO FAR STATES THAT EXCESS GAS IN THE OIL IS AN ISSUE AND VERY BAD FOR THE ENGINE. I AM CONCERNED THAT MOST CONSUMERS WHO PURCHASED A 2017 HONDA CR-V ARE NOT AWARE OF THIS ISSUE.

NHTSA ID Number: 11096603

Incident Date April 17, 2018

Consumer Location SUPERIOR, CO

Vehicle Identification Number 2HKRW2H89HH****

Summary of Complaint

I BOUGHT THIS 2017 CRV EXL-NAV AWD IN 05/2017. WE DID THE FIRST MAINTENANCE ON MARCH 17 TO CHANCE OIL AT 8000 MILES. THERE IS OIL LEAKAGE, I WILL TALK THIS ON ANOTHER COMPLAINT. I HEARD THAT THERE IS OIL EXCESSIVE PROBLEM ON THIS 1.5T ENGINE, SO I CHECKED THE ENGINE OIL LEVEL AT ABOUT 8800 MILES AND FOUND THAT THE OIL LEVEL IS MORE THAN 10MM HIGHER THAN THE MAXIMUM MARK ON THE LIPSTICK. I BROUGHT THE CAR TO DEALER AND THEY SAID IT IS FINE. I AM VERY UPSET WITH THEIR ANSWER. I HAVE ATTACHED THE PHOTO, THE OIL LEVEL IS EXCEEDING THE ORANGE PLASTIC TO THE METAL PART. ACTUALLY CRV HAS BEEN STOPPED FOR SALE IN CHINA FOR 2 MONTHS UNTIL HONDA INITIATE A RECALL AND EXTEND THE WARRANTY TO 6 YEARS. RELIABILITY IS THE MAIN REASON I BOUGHT HONDA, NOW I AM SO DISAPPOINTED. WILL NOT CONSIDER ANY HONDA UNLESS THEY OFFER A SATISFACTORY SOLUTION.

NHTSA ID Number: 11092048

Incident Date May 2, 2018

Consumer Location NASHVILLE, TN

Vehicle Identification Number 2HKRW2H51HH****

Summary of Complaint

MY NEW 2017 HONDA CRV EX THAT ONLY HAS 6850 MILES DRIVEN ON IT HAS A TERRIBLE DEFECT WITH OIL DILUTION ISSUES DUE TO FUEL LEAKING INTO THE OIL PANS CAUSING OVERFLOW AND DILUTION TO THE OIL THAT IS SUPPOSED TO BE LUBRICATING THE ENGINE. THE OIL SMELLS VERY POTENT OF FUEL AND ALMOST 1 QUART OF EXTRA FLUID WAS DRAINED FROM THE

OIL PAN WHEN TAKEN INTO THE DEALER AFTER REPORTING THE ISSUE. THE DEALER AGREED THAT THERE WAS A MAJOR ISSUE WITH FUEL DILUTING INTO THE OIL BUT WERE TOLD BY THE HONDA CORPORATE TECH LINE THAT THEY WERE TO JUST REPLACE THE OIL UNTIL A FIX COMES OUT. THE DEALER TECHNICIANS ASKED ABOUT CHANGING THE FUEL INJECTORS OR MAYBE A CYLINDER HEAD REPLACEMENT BUT WERE TOLD NOT TO DO ANYTHING. IT IS NOT SAFE TO RELEASE THESE CARS BACK TO THE OWNER KNOWING THERE IS AN DEFECT ISSUE THAT THEY DIDN'T EVEN REALLY ATTEMPT TO FIX THAT IS CAUSING INTERNAL ENGINE PARTS TO BREAK DOWN FASTER THAN NORMAL AND COULD CAUSE SERIOUS SAFETY CONCERNS DUE TO EVENTUAL BREAKDOWNS LEADING TO WRECKS. THE COMPANIES "FIX" IS TO GO IN FOR AN OIL CHANGE EVERY 500-1000 MILES EVEN THOUGH EXCESSIVE FUEL IS STILL MIXING WITH THE OIL. HONDA HAS REPORTED THAT THIS IS HAPPENING IN COLDER CLIMATES, BUT I AM STILL HAVING MAJOR ISSUES WITH THIS IN TENNESSEE WEATHER.

NHTSA ID Number: 11090588

Incident Date May 4, 2018

Consumer Location DULUTH, MN

Vehicle Identification Number 5J6RW2H89HL****

Summary of Complaint

2017 HONDA CRV. CONSUMER WRITES IN REGARDS TO DAMAGE TO THE ENGINE. *LD

THE CONSUMER WAS ADVISED THAT GASOLINE WAS MIXING WITH ENGINE OIL. *JS

NHTSA ID Number: 11093050

Incident Date May 9, 2018

Consumer Location KENMORE, NY

Vehicle Identification Number 5J6RW2H84HL****

Summary of Complaint

2017 HONDA CRV. CONSUMER WRITES IN REGARDS TO OIL DILUTION AND GAS FUME PROBLEM. *LD

NHTSA ID Number: 11098362

Incident Date May 21, 2018

Consumer Location VACAVILLE, CA

Vehicle Identification Number 5J6RW1H88HL****

Summary of Complaint

I HEARD THAT THERE IS OIL LEVEL INCREASE PROBLEM ON THIS MAKE, MODEL, AND YEAR'S ENGINE BECAUSE OF FUEL LEAK, SO I CHECKED THE ENGINE OIL LEVEL A FEW HUNDRED MILES AFTER CHANGING THE OIL AND FOUND THAT THE OIL LEVEL IS MUCH HIGHER THAN THE MAXIMUM MARK ON THE DIPSTICK. I BROUGHT THE CAR TO DEALER PREVIOUSLY, COMPLAINING OF A SMELL OF GAS IN THE OIL WHEN I CHECKED IT INITIALLY, AND THEY SAID IT IS FINE, THAT NOTHING IS WRONG. BOTH TIMES OF CHECKING THE OIL, THE CAR WAS IN MY GARAGE, STATIONARY, ON LEVEL GROUND.


NHTSA ID Number: 11098343

Incident Date May 26, 2018

Consumer Location SEATTLE, WA

Vehicle Identification Number 5J6RW2H97HL****

Summary of Complaint

THERE IS CERTAINLY AN EXCESS AMOUNT OF GAS MIXED IN ENGINE OIL. ONLY FEW WEEKS AFTER OIL CHANGE, THE OIL LEVEL IS ALREADY 20 MM ABOVE THE MAX LINE. IT'S CERTAINLY A DESIGN FLAW AND I THINK HONDA SHOULD BE RESPONSIBLE FOR THIS MISTAKE AND THE CUSTOMERS. IT'S HUGE SAFETY CONCERN AND HOPE THE RELEVANT RESOURCES CAN TAKE ACTION TO INVESTIGATE THIS ISSUE.


NHTSA ID Number: 11098520

Date of Incident: 05/29/2018

Consumer Location: CAMDEN, AR

Vehicle Identification No. (VIN): 5J6RM3H3XGL...

SUMMARY:

OIL ISSUE..THERE SEEMS TO BE A RECALL ON HONDA VEHICLES IN CHINA DUE TO GASOLINE FLOWING INTO THE OIL..MY SON WAS CHECKING THE OIL AND IT SMELLS LIKE GAS...I HOPE THIS DOES NOT CASE A FIRE HAZARD AS MY OIL NOW HAS BECOME GASOLINE. YET NO RECALL IN AMERICA WHY?

97.    Additionally, the following are some examples of the many

complaints submitted to ODI by Honda Civic owners.

NHTSA ID Number: 11090346

Date of Incident: 02/13/2018

Consumer Location: JACKSONVILLE, FL

Vehicle Identification No. (VIN): 19XFC1F30HE...

SUMMARY:

2016 NEW HONDA CIVIC 2.0 ENGINE OIL LEAKING ! ! ! 2017 NEW HONDA CIVIC
1.5T ENGINE OIL INCREASED13 MM THE SAME STATION 2017. NEW HONDA
CIVIC WIPERS BROKEN , REVERSING RADAR BROKEN INCREASED OIL 13MM IS
NOT A MALFUNCTION! ENGINE OIL INCREASED, REPAIRED TWICE, NOT
REPAIRED, HONDA SAID NO WAY


NHTSA ID Number: 11083635

Date of Incident: 04/06/2018

Consumer Location: SCHWENKSVILLE, PA

Vehicle Identification No. (VIN): 19XFC1F98HE...

SUMMARY:

I HAVE A 2017 HONDA CIVIC WITH THE 1.5 LITER TURBO. I STARTED SEEING
LOTS OF INFORMATION ON THE CIVIC FORUM ABOUT OIL DILUTION SO I
DECIDED TO HAVE MY ENGINE OIL ANALYZED. THE REPORT CAME BACK
SAYING THAT THE AMOUNT OF FUEL IN MY OIL WAS GREATER THAN 5%
WHICH WAS DEEMED CRITICAL . THIS CONDITION WILL CAUSE ENGINE
FAILURE AND POSSIBLE UNSAFE CONDITIONS.

# CLASS ACTION ALLEGATIONS

98.    Plaintiffs bring this action on behalf of themselves, and on behalf of the following nationwide class pursuant to FED. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the nationwide class consists of the following:

**Nationwide Class:**
All persons or entities in United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

99.    In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Nationwide Class above:

**Minnesota Class:**
All persons or entities in Minnesota who are current or former owners and/or lessees of a Class Vehicle (the "Minnesota Class").

**Florida Class:**
All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle (the "Florida Class").

**California Class:**
All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle (the "California Class").

**Georgia Class:**
All persons or entities in Georgia who are current or former owners and/or lessees of a Class Vehicle (the "Georgia Class").

100.    Together, the Minnesota Class, Florida Class, California Class and Georgia Class shall be collectively referred to herein as the "State Sub-Classes."

Excluded from the Classes are Defendant, its affiliates, employees, officers and

directors, persons or entities that purchased the Class Vehicles for resale, and the

Judge(s) assigned to this case.  Plaintiffs reserve the right to modify, change or

expand the Class definitions.

101.   <u>Numerosity</u>: Upon information and belief, the Classes are so

numerous that joinder of all members is impracticable. While the exact number and

identities of individual members of the Classes are unknown at this time, such

information being in the sole possession of Honda and obtainable by Plaintiffs only

through the discovery process, Plaintiffs believe that thousands of Class Vehicles

have been sold and leased in each of the states that are the subject of the Classes.

102.   <u>Existence and Predominance of Common Questions of Fact and Law</u>:

Common questions of law and fact exist as to all members of the Classes. These

questions predominate over the questions affecting individual Class members.

These common legal and factual questions include, but are not limited to:

      a.  whether the engines in the Class Vehicles are predisposed to

          premature failure;

      b.  whether the engines in the Class Vehicles contain a manufacturing or

          other defect;

      c.  whether the defective PCV system is common to all or some of the

          Class Vehicles;

      d.  if so, whether the Engine Defect causes engines to fail in the Class

Vehicles;

e.  whether Defendant knowingly failed to disclose the existence and

cause of the Engine Defect in Class Vehicles;

f.  whether Defendant's conduct violates the Minnesota, Florida,

California and/or Georgia consumer protection statutes;

g.  whether, as a result of Defendant's omissions and/or

misrepresentations of material facts related to the Engine Defect,

Plaintiffs and members of the Class have suffered ascertainable loss of

monies and/or property and/or value;

h.  whether, as a result of Defendant's omissions and/or

misrepresentations of material facts related to the Engine Defect,

Plaintiffs and members of the Class have suffered an increased cost of

maintenance related to the Class Vehicles; and

i.  whether Plaintiffs and Class members are entitled to monetary

damages and/or other remedies and, if so, the nature of any such

relief.

103.  Typicality: All of the Plaintiffs' claims are typical of the claims of the

Classes since Plaintiffs purchased Class Vehicles with Engine Defects and

defective vehicle designs, as did each member of the Class. Furthermore, Plaintiffs

and all members of the Classes sustained monetary and economic injuries

including, but not limited to, ascertainable loss arising out of Honda's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

104.   Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Classes that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

105.   Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Honda's conduct. It would be virtually impossible for members of the Classes to individually and effectively redress the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Honda's vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

106. <u>Injunctive Relief</u>: Pursuant to Fed. R. Civ. P. 23(b)(2), Honda has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

<u>**VIOLATIONS ALLEGED**</u>

<u>**COUNT I**</u>
**VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. §§ 325F.68-70)**
**(On Behalf of the Minnesota Class)**

107. Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

108. Plaintiffs and members of the Classes are each "persons" as defined by the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), MINN. STAT. § 325F.68(2). The Class Vehicles sold or leased to Plaintiffs and the Classes are "Merchandise" as defined by MINN. STAT. § 325F.68(2).

109. The MPCFA makes unlawful "[t]he act, use, or employment by any

person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1). The MPCFA further provides that "any person injured by a violation of [the MPCFA] may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." MINN. STAT. § 8.31(3a).

110.    Defendant engaged in unlawful conduct in violation of the MPCFA by making knowing and intentional omissions. Defendant knowingly failed to disclose the manufacturing and/or material Engine Defect in the Class Vehicles in order to secure the sale of the Vehicles at a premium price.

111.    Furthermore, when the engines in the Class Vehicles fail to function properly and require repair due to the Engine Defect, Defendant also does not reveal to Class members that such premature engine failure is the result of a manufacturing and/or material defect actually caused by Defendant. Instead, Class members are forced to pay out of pocket for repairs necessitated by Defendant's defective product.

112.    Defendant did not fully and truthfully disclose to its customers the true nature of the inherent defect in the engines, which was not readily

discoverable until after the Vehicles were purchased. As a result, Plaintiffs and the

other Class members were fraudulently induced to lease and/or purchase the Class

Vehicles with the said Engine Defect and all of the resultant problems. These facts

that Defendant concealed were solely within its possession.

113.    Defendant intended that Plaintiffs and all Class members rely on the

acts of concealment and omissions, so that they would purchase the Class

Vehicles.

114.    Defendant's conduct caused Plaintiffs and Class members to suffer an

ascertainable loss. In addition to direct monetary losses, Plaintiffs and Class

members have suffered an ascertainable loss by receiving less than what was

promised.

115.    A causal relationship exists between Defendant's unlawful conduct

and the ascertainable losses suffered by Plaintiffs and the Classes. Had the Engine

Defect in the Class Vehicles been disclosed, consumers would not have purchased

them or would have paid less for the Class Vehicles had they decided to purchase

them.

116.    Plaintiffs and the Classes sustained damages as a result of Defendant's

unlawful acts and are, therefore, entitled to damages and other relief as provided

under the MPCFA.

## COUNT II
### VIOLATION OF THE FLORIDA
### DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
(FLA. STAT. § 501.201, *et seq.*)
**(On Behalf of the Florida Class)**

117. Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

118. The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202 (2).

119. Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members the fact that the Class Vehicles suffer from a manufacturing and design defect (and the costs, risks, and diminished value of the Vehicles resulting from this problem), which was not readily discoverable until after purchase. Defendant should have disclosed this information because it was in a superior position to know the true facts related to this defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to this defect until after manifestation of the

defect.

120.   These unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiffs and members of the Classes.

**COUNT III**
**BREACH OF THE IMPLIED**
**WARRANTY OF MERCHANTABILITY**
**(Pursuant to the Song-Beverly Act California Civil Code § 1791.1)**
**(On Behalf of the California Class)**

121.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

122.   Plaintiffs bring this cause of action against Defendant on behalf of themselves and on behalf of the members of the California Class.

123.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

124.   Defendant provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their engines suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

125.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use while the Class Vehicles were being operated.

126.   Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, for reasons including but not limited to the defective design and manufacture of their engines.

127.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

<u>**COUNT IV**</u>
**VIOLATION OF CALIFORNIA'S CONSUMER**
**LEGAL REMEDIES ACT**
**(California Civil Code § 1750 *et seq*.)**
**(On Behalf of the California Class)**

128.   Plaintiffs and the Classes incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

129.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the California Class.

130.   Defendant is a "person" as defined by California Civil Code § 1761(c).

131.   Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

132.   By failing to disclose and concealing the defective nature of the Class Vehicles' engines from Plaintiffs and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their engines had characteristics and benefits that they do not have, and represented that the Class Vehicles and their engines were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5), (7).

133.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

134.   Defendant knew that the Class Vehicles and its engines suffered from an inherent defect, were defectively designed or manufactured, would fail

prematurely, and were not suitable for their intended use.

135.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the engines and/or the associated repair costs because:

      a.   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' engines;

      b.   Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their engines had a dangerous safety defect until the Engine Defect manifested; and

      c.   Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the Engine Defect.

136.   In failing to disclose the defective nature of the engines, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

137.   The facts concealed or not disclosed by Defendant to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles or pay a lesser price.  Had Plaintiffs and other Class Members known that the Class Vehicles' engines were defective, they would not have purchased the Class Vehicles or would have paid less for them.

138.   Plaintiffs and the Class Members are reasonable consumers who do not expect the engines installed in their vehicles to fail prematurely.  This is the

reasonable and objective consumer expectation relating to the Class Vehicles.

139.   As a result of Defendant's conduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles have experienced and will continue to experience premature engine failures.

140.   As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

141.   Plaintiffs and the Class Members are entitled to equitable relief.

142.   Plaintiff Bautista on behalf of himself and all prospective Class Vehicle owners provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a).   Defendant failed to provide appropriate relief for its violations of the CLRA in response to notice. Accordingly, Plaintiffs also seek monetary and compensatory damages from Defendant in addition to the injunctive and equitable relief that is currently sought.

### COUNT V
### UNFAIR COMPETITION AND
### UNLAWFUL CONDUCT OR PRACTICES
### (California Business & Professions Code § 17200, *et seq.*)
### (On Behalf of the California Class)

143.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

144.   Plaintiffs bring this cause of action on behalf of themselves and on

behalf of the California Class.

145.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

146.   Plaintiffs and the Class Members are reasonable consumers who do not expect their engines to prematurely fail.

147.   Defendant knew the Class Vehicles and their engines suffered from inherent defects, were defectively manufactured, would fail prematurely, and were not suitable for their intended use.

148.   In failing to disclose the Engine Defect, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

149.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles and their engines:

      d.  Defendant were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' engines;

      e.  Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their engines; and

      f.  Defendant actively concealed the defective nature of the Class Vehicles and their engines from Plaintiffs and the Class.

150.   The facts concealed or not disclosed by Defendant to Plaintiffs and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase Class Vehicles.

Had Plaintiffs and other Class Members known that the Class Vehicles' engines were defective and posed a safety hazard, then Plaintiffs and the other Class Members would not have purchased Class Vehicles, or would have paid less for them.

151.   Defendant continued to conceal the defective nature of the Class Vehicles and their engines even after Class Members began to report problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem.

152.   By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

153.   Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

154.   As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

155.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

## COUNT VI
## VIOLATION OF THE GEORGIA
## FAIR BUSINESS PRACTICES ACT
### (On Behalf of the Georgia Class)

156.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

157.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Georgia Class.

158.   In accordance with the statutory requirements of Georgia's Fair Business Practices Act, Plaintiff Hamilton provided Defendant with a demand letter outlining an opportunity to make a written offer of settlement of this claim on behalf of Mr. Hamilton and all putative class members within 30 days. Defendant did not respond to said letter.

159.   Defendant's practices, acts, policies, and course of conduct, including its omissions, as described above, were intended to induce, and did induce, Plaintiff Hamilton and members of the Georgia Class to purchase the above-mentioned Class Vehicles with the Engine defect.

160.   Defendant sold and/or leased the Class Vehicles knowingly concealing that they contained the defects alleged.

161.   Defendant's acts are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the Class Vehicles. Honda's aforementioned deceptive acts and practices are material, in

part, because they concern an essential facet of the Class Vehicles' safety, cost,

durability, performance, or quality. The sale and distribution of the Class Vehicles

in Georgia was a consumer-oriented act and thereby falls under the Georgia's Fair

Business Practices Act.

162.   Defendant's practices, acts, policies and course of conduct violated

the Georgia's Fair Business Practices Act in that:

a. At the time of sale, Defendant knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose to Plaintiff Hamilton and the Georgia Class Members the known Engine Defect and the known risks associated therewith.

b. Thereafter, Defendant failed to disclose the defects to Plaintiff, and the Georgia Class Members, either through warnings or recall notices, and/or actively concealed from them the Engine Defect, despite the fact that the company knew of such defects: (1) at the time of manufacturing; (2) at the point where NHTSA began to record complaints about the defect; and, at the very latest, (3) when similar vehicles were recalled in China as detailed herein.

c. Defendant forced Plaintiff and the Georgia Class Members to expend time and/or money to attempt to remedy the Engine Defect, despite the fact that Defendant had prior knowledge of the defect at the time of purchase or thereafter.

d. Defendant also engaged in materially misleading deceptive acts and practices by advertising and selling a limited warranty while knowing that significant portions of the damages resulting from the known, but concealed, Engine Defect would not be revealed to the consumer until after coverage expired thereunder and that many of the engines may fail prematurely, but outside the warranty period.

e. Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good

working order, merchantable, and not defective, despite Defendant's knowledge that the vehicles would not perform as intended, represented, and warranted and that the Engine Defect would cause purchasers to incur significant out-of-pocket costs and expenses.

163.   Plaintiff and the Georgia Class Members justifiably relied upon Honda's representations in its maintenance schedule that stated that "[i]t is essential that you have your car serviced as scheduled to retain its high level of safety, dependability, and emissions control performance."

164.   Specifically, Honda's maintenance schedule provides that under "Normal Conditions" the engine oil need only be replaced every 7,500 miles or 12 months, or every 3,750 or 6 months under "Severe Conditions".

165.   Nowhere within the owners' manual or maintenance schedule does Honda indicate that the Engine Defect exists, or that oil changes must be done more frequently than as specified within the maintenance schedule to retain the Class Vehicles' "high level of safety, dependability, and emissions control performance."

166.   Despite the fact that Plaintiff and other Class Vehicle owners have confronted Honda about the apparent falsity of the above representations, Honda has not disclosed the Engine Defect, asserting special knowledge.

167.   The aforementioned conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that Defendant has, through knowing, intentional, and material omissions, concealed

the Engine Defect.

168.   By making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

169.   Members of the public were deceived by Defendant's failure to disclose and could not discover the defect themselves before suffering their injuries.

170.   Had Plaintiff and the other Class Members known about the existence of the Engine they would not have purchased or leased their Class Vehicles and/or paid as much for them. As such Plaintiff and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

171.   As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiff and the Georgia Class Members have been injured as alleged herein and are entitled to recover actual and/or statutory damages to the extent permitted by law, in an amount to be proven at trial.

172.   Plaintiff and Georgia Class Members also seek appropriate equitable relief, including an order requiring Honda to adequately disclose and remediate the Engine Defect and an order enjoining Honda from selling vehicles with the Engine Defect in the future.

## COUNT VII
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Nationwide Class and State Sub-Classes)

173.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

174.   Defendant expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Defendant also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty, Powertrain Limited Warranty and certified pre-owned ("CPO") warranty periods.

175.   Defendant breached these warranties by selling to Plaintiffs and Class members the Class Vehicles with known engine problems, which are not of high quality, and which fail prematurely and/or fail to function properly.

176.   As a result of the Defendant's actions, Plaintiffs and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

177.   Defendant's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitations are unenforceable because it

knowingly sold a defective product without informing consumers about the

manufacturing and/or material defect.  Furthermore, Defendant continues to charge

Class members for repairing the defective engines—if it repairs them at all—when

in fact such repairs are actually necessitated because of Defendant's defective

product.

178.   The time limits contained in Defendant's warranty periods were also

unconscionable and inadequate to protect Plaintiffs and members of the Class.

Among other things, Plaintiffs and Class members had no meaningful choice in

determining these time limitations, the terms of which unreasonably favored

Defendant. A gross disparity in bargaining power existed between Honda and

Class members, and Honda knew or should have known that the Class Vehicles

were defective at the time of sale and would fail well before their useful lives.

179.   Plaintiffs and Class members have complied with all obligations

under the warranties, or otherwise have been excused from performance of said

obligations as a result of Defendant's conduct described herein.

## COUNT VIII
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the Nationwide Class and State Sub-Classes)

180.   Plaintiffs and the Class incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

181.   A warranty that the Class Vehicles were in merchantable condition is

implied by law.

182.   These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Class Vehicles are inherently defective in that there are defects in the Class Vehicles' engines, which are not of high quality, and which fail prematurely and/or fail to function properly.

183.   Defendant was provided notice of these issues by numerous informal and formal complaints filed against them, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

184.   As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

**COUNT IX**
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class and State Sub-Classes)**

185.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

186.   Defendant made material omissions concerning a presently existing or past fact. For example, Defendant did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the Class Vehicles'

engines, which was not readily discoverable until after the Vehicles were purchased. As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said Engine Defect and all of the resultant problems.

187.   These omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiffs and Class members rely upon them.

188.   Plaintiffs and Class members reasonably relied on these omissions, and suffered damages as a result.

**COUNT X**
**BREACH OF THE DUTY OF GOOD FAITH**
**AND FAIR DEALING**
**(On Behalf of the Minnesota, California and Georgia Sub-Classes)**

189.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

190.   Every contract in Minnesota, California and Georgia contain an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

191.   Defendant breached the covenant of good faith and fair dealing through malicious conduct by, *inter alia*, failing to notify Plaintiffs and Class members of the Engine Defect in the Class Vehicles, and failing to fully and properly repair this defect.

192.    Defendant acted in bad faith and/or with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

**COUNT XI**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class and State Sub-Classes)**

193.    Plaintiffs and the Class incorporate the foregoing allegations. This count is pled in the alternative to the contract-based claims.

194.    Plaintiffs and members of the Class conferred a benefit on Defendant.

195.    Defendant had knowledge that this benefit was conferred upon it.

196.    Defendant has been and continues to be unjustly enriched at the expense of Plaintiffs, and its retention of this benefit under the circumstances would be inequitable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully requests that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Classes as defined above;

B.    appoint Plaintiffs as the representative of the Classes and their counsel as Class counsel;

C.     award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiffs and Class members are entitled;

D.     award pre-judgment and post-judgment interest on such monetary relief;

E.     grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F.     award reasonable attorney's fees and costs; and

G.     grant such further relief that this Court deems appropriate.


Dated: November 30, 2018


Respectfully submitted,


**GUSTAFSON GLUEK PLLC**

By:     *s/ Daniel C. Hedlund*
        Daniel C. Hedlund (#258337)
        Canadian Pacific Plaza
        120 South Sixth Street, Suite 2600
        Minneapolis, Minnesota 55402

Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com

*Liaison Counsel*


Matthew D. Schelkopf (admitted *pro hac vice*)
**SAUDER SCHELKOPF**
555 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: (610) 421-1326
mds@sstriallawyers.com

*Interim Lead Counsel*


Matthew R. Mendelsohn (admitted *pro hac vice*)
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 228-9898
Fax: (973) 228-0303
mrm@mazieslater.com

*Chair of the Executive Committee*


Nicholas A. Migliaccio (*pro hac vice* to be filed)
Jason S. Rathod (*pro hac vice* to be filed)
**Migliaccio & Rathod LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com


*Executive Committee*